The Holland Trust Company, Respondent, *v.* James A. Waddell, Appellant.

*Motion for a nonsuit improperly denied — when not a ground for reversal — evidence — certificate of deposit — defense thereto — accommodation note — right of action thereon — an accommodation certificate of deposit — renewal of note — collateral security not released thereby — rights of the payee as to collateral security.*

Although the motion of a defendant for a nonsuit at the close of the plaintiff's case should have been granted, if the defect in the plaintiff's proof be thereafter supplied by the defendant's witnesses, a reversal will not be directed upon appeal on account of the denial of the motion for a nonsuit.

The evidence considered and commented upon which is sufficient to authorize a court to direct a jury to find that a person was a *bona fide* holder for value of a certificate of deposit.

The mere fact that the holder of a valid certificate of deposit knew that the person to whom it was given had no deposit with the bank giving the same, and that it was issued simply for his accommodation, is no defense to an action thereon.

The holder of an accommodation note, issued for a particular purpose and used for that purpose, who has parted with value upon the faith thereof, has a legal claim to recover thereon.

An agreement to accept as security for a loan a certificate of deposit issued by a certain bank, cannot be termed a request that such bank should issue such certificate to the proposed borrower for the accommodation of the proposed lender.

The renewal of notes from time to time in no way extinguishes the original debt; it is simply an extension of the time of payment and a change as to the evidence of the debt, and all collaterals pledged for the payment remain as security, notwithstanding the extension of the time of payment.

A promissory note contained a recital that the maker thereof had deposited with the payee as collateral security for the payment thereof, and of other demands, certain property as per a memorandum, and authorized the sale of the collateral in case of non-payment, with an authority to the payee to become the purchaser at such sale.

*Held*, that the provision contained in such note was not a limitation upon the right of the payee in respect to the collateral, but was an expansion of its rights, giving to the payee a power of sale and a right to purchase independent of the rights which a pledgee of securities of the kind in question would otherwise enjoy.

Appeal by the defendant, James A. Waddell, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 17th day of February, 1893, rendered upon the verdict of a jury in favor of the plaintiff for $22,797.23

by direction of the court after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 31st day of May, 1893, denying the defendant's motion to set aside the verdict and for a new trial made on a case and exceptions.

*B. N. Harrison*, for the appellant.

*G. H. Yeaman*, for the respondent.

VAN BRUNT, P. J. :

This action was brought to recover upon a certificate of deposit for $20,000 alleged to have been issued by the defendant, doing business at Key West, Florida, under the name of the " John White Bank," to one Oppenheim, of which the plaintiff claimed to be a holder for value. The answer admitted the issuance of a certificate of deposit to Oppenheim, but denied that such certificate was as declared upon in the complaint, and denied that the plaintiff was a holder for value, or that the plaintiff was the lawful holder or owner thereof. The answer then alleged that the certificate which the defendant issued was made and delivered to Oppenheim without consideration, which the plaintiff knew; and that the plaintiff held the writing without value and upon a fraudulent agreement that said writing should be kept merely to mislead and deceive the plaintiff's board of directors and the New York State Banking Department, in the event of inquiry into and disapproval of the real terms of a transaction theretofore completed or agreed upon between Oppenheim and the plaintiff, by which the plaintiff either purchased from Oppenheim 100 municipal bonds of the city of Key West, Florida, for $1,000 each, or loaned and advanced $100,000 to the said Oppenheim upon his note for that amount with said bonds as collateral security to secure the payment of the note, the precise nature of the transaction being to the defendant unknown. The answer then alleged that there was nothing due from Oppenheim to the plaintiff upon said loan for which said writing could be held as security; and that there was nothing due from the defendant to Oppenheim.

Upon the trial of the issues thus framed, the court directed a verdict in favor of the plaintiff. A motion having been made for a new trial upon a case made and settled such motion was denied; and from the judgment entered upon the verdict, and from the order denying said motion for a new trial, this appeal is taken.

Upon the trial the plaintiff, having proved its incorporation, offered in evidence the writing declared on in the complaint, to which counsel for the defendant objected as not having been proved. This objection was overruled on the ground that the answer admitted it sufficiently to identify it, and the defendant excepted. Oppenheim's indorsement was then proved, and demand and refusal of payment and plaintiff rested. Thereupon the defendant's counsel moved to dismiss the complaint upon several grounds, among which was one that the certificate of deposit had not been sufficiently proved, which seems to embrace all the other grounds stated. This motion was denied and an exception taken, and it is urged that this ruling was error. Whatever might have been our opinion of the question had no additional evidence been given, we think that the defendant supplied whatever defect existed in respect to the authenticity of the certificate of deposit. While upon the stand the defendant was asked : "BY THE COURT. Q. In whose hand-writing is that signature?" (handing the witness the certificate of deposit declared on in the complaint). This question was objected to as irrelevant and immaterial to anything as to which this witness had been examined, and as an improper question to be put by the court under the circumstances. This objection was overruled and an exception taken which we do not understand to be insisted upon on this appeal. "A. That looks like mine.

"BY THE COURT. Q. Is it not? A. I think it is. I signed a paper similar to this, and I thought it had certain restrictions or limitations."

The latter part of the answer was directed by the court to be stricken out, and counsel for defendant excepted.

"BY THE COURT. Q. All I want to know is if that is your own handwriting — whose signature is that? A. That looks like mine. I thought there was a restriction of six months in the certificate, and, when I signed, that was talked of."

It further appeared that when this certificate was presented to the plaintiffs they telegraphed to the John White Bank at Key West as follows :

"Is B. G. Oppenheim certificate of deposit twenty thousand dollars with you good? Wire answer."

On the next day an answer was received by the plaintiff from the

John White Bank, "See Jas. A. Waddell, cashier at 10 Wall St., New York." James A. Waddell is the defendant in this action.

On the day of the sending of the telegram by the plaintiff to defendant's bank, Oppenheim asked defendant to go over with him to plaintiff's office and be introduced to the plaintiff's secretary. The defendant went there with Oppenheim, was introduced, and upon being shown the paper he had signed in Oppenheim's office as hereinafter stated, he was asked by the secretary whether the signature was his, which he answered in the affirmative. This evidence clearly proved the certificate and cured whatever defect, if any, had previously existed in the proof.

The defendant, on being examined, testified as to his first acquaintance with Oppenheim in November, 1889, and to the remarkable and enduring effect which a letter from the plaintiff had upon him, asking Oppenheim if he saw any good municipal bonds he could buy right, to do so, and they would divide the profits between them.

There was also introduced a letter from Oppenheim to the plaintiffs, dated March 8, 1890, announcing to them that he had made an offer to purchase $100,000 worth of the municipal bonds of Key West, Florida, five per cent, thirty years, with the option of obtaining the entire issue of $400,000, and he made the proposition to the plaintiff to discount his note of $100,000, with these bonds as collateral security, and offered in this connection to employ the plaintiff to sell and dispose of the bonds of the city of Key West at a price to be named and a commission to be agreed upon, the plaintiff, as it sold and disposed of the bonds, to place the cash received from such sale to the credit of Oppenheim's note, and various other terms were stated. There was also introduced a letter from Oppenheim to Van Siclen, the secretary of the plaintiff, dated the 17th of March, 1890, notifying him that the board, the next day, would pass a resolution giving him the sale of the bonds at ninety-seven and one-half and a commission to him of two and four-tenths.

There was also introduced in evidence a proposition, made by Oppenheim to the honorable board of city commissioners of Key West, for the purchase of the bonds to be issued by the city of Key West, and a contract entered into between the city of Key West and Oppenheim, dated the 20th of March, 1890, for the sale of $100,000 of the bonds.

On the 5th of April, 1890, Oppenheim, from Key West, addressed a letter to the plaintiff, stating :

" Referring to my letter to you, dated March 8th, 1890, I have to add that I have become the purchaser of 400,000 of the bonds of the city of Key West, Fla., and that I am to provide $100,000 on May 1st, 1890, balance on 60 days' notice.

" I desire to renew my proposition above referred to to you, and to say that I expect the assistance of the John White Bank of this place. * * *

" I hope to have a telegram from you on Wednesday next, April 9th, as I desire to leave for N. Y. on Thurs., the 10th instant."

Van Siclen, on the ninth of April, telegraphed Oppenheim at Key West : " Will accept note ten thousand, two months, indorsed John White Bank." Subsequent to the entering into the contract for the purchase of the bonds by Oppenheim, the defendant saw a good deal of him, and on the 10th of April, 1890, was so impressed by his mention of Van Siclen and the Holland Trust Company that he gave Oppenheim a general retainer of $5,000 a year as his attorney.

On the 29th of April, 1890, Oppenheim wrote the Holland Trust Company as follows :

" GENTLEMEN.— I hereby make application for a loan of $100,000 which I propose to borrow on my two months' note for that amount, with collateral consisting of one hundred thousand dollars in the municipal bonds of the city of Key West (all coupons attached), and as additional security to the Holland Trust Company I offer a certificate of deposit for the sum of ten thousand dollars. Said certificate of deposit is issued by the John White Bank of the city of Key West, and is dated April 1st, 1890, and has six months to run, with interest at 5 per cent per annum."

On the 2d day of May, 1890, the Holland Trust Company, through Van Siclen as secretary, wrote Oppenheim as follows :

" DEAR SIR.— The executive committee of this company has accepted your application for a loan of $100,000, by discounting your note at sixty days for that amount, with $100,000 of the bonds of the city of Key West, Fla., and a certificate of deposit for $20,000 instead of $10,000 in the John White Bank of Key West, Fla., as collateral, upon approval, &c."

On May third the plaintiff, through its secretary, wrote Oppenheim: "The sum of $100,000 is here awaiting the bonds, &c., of Key West, as indicated in my letter to you of May 1st." The letter of May first was not produced.

On the same day Oppenheim wrote to the John White Bank, Key West, informing them that the Holland Trust Company had placed the $100,000 for the bonds at his disposal, or rather at the disposal of the treasurer of the city of Key West, and that formal notice had been sent to the treasurer. He then states that this letter was written simply to inform defendant that the Holland Trust Company required him to deposit with them, as collateral, a certificate of deposit for $20,000 and not $10,000 as they first informed him, and asking the defendant to make a certificate of deposit for the sum of $20,000, payable to Oppenheim, dated the 1st of April, 1890, and to have it run for six months, with interest at five per cent per annum. It is undoubtedly from this letter that the witness got the idea that the certificate of deposit which he signed had a six months' clause in it, as testified to by him. This reference to the certificate of deposit to be made by his bank the defendant swore was the first time anything had been said to him about any certificate of deposit to be furnished by him for use in connection with the handling of the bonds; he had never heard such a thing before, and made no reply to the letter.

On the 5th of May, 1890, Oppenheim wrote to the plaintiff, reciting the terms of the proposed loan mentioned in the plaintiff's letter of May second, and accepting the same, and asking that the cash might be ready for him against the completion of the bonds, which would be in ten or fifteen days from date.

Prior to the receipt at Key West of Oppenheim's letter of May third to the John White Bank, the defendant had left for New York, where he arrived on May sixth, and from New York went to Newport, to which place Oppenheim's letter was forwarded, where it was received by him.

On the twenty-ninth of May the plaintiff wrote to Oppenheim: "As previously advised we have been holding for you the sum of $100,000 since Friday, May 23d. The interest on this amounts to $116.67, being 7 days at 6 per cent. Please send check so that we may get it in this month's account."

On the 2d of June, 1890, plaintiff also wrote to Oppenheim : " As you have not paid the interest as per memorandum sent you on Thursday last, and as the bonds have not arrived, we hereby notify you that we cannot hold the $100,000 for you any longer." On the fourth of June, Oppenheim wrote to plaintiff acknowledging receipt of these letters of May twenty-ninth and June second, and asking them to hold the $100,000 for a week longer, and informing them that the delay in the delivery of the bonds had been caused by an informality which he hoped would be rectified promptly, and further stating that he expected to have funds in a few days and promising to pay the amount due for interest on the sum held for him.

In the early part of June the defendant came to New York, saw Oppenheim and had a conversation with him respecting the issuing to him of the certificate of deposit, which at first defendant said he could not give as Oppenheim had no money on deposit with defendant's bank. Defendant further testified that Oppenheim urged that the certificate was only a matter of accommodation, and was so understood by Van Siclen, and that the certificate did not mean anything except to accommodate him, and was intended to be held by the trust company as a satisfaction to any one who would examine the collaterals or the papers or assets of the Holland Trust Company. After several days, as a result of this conversation, the certificate was given dated May 1, 1890, and on the tenth of June Oppenheim wrote to Van Siclen : " I expect the bonds to arrive in the city this evening and they will be at your bank to-morrow morning ; I send herewith my note and the cert. of deposit as agreed." It would appear to have been on the same day that Oppenheim and the defendant went to the Holland Trust Company and saw Van Siclen, who produced the certificate which had been signed by defendant, and asked him if that was his signature as above stated, and immediately thereafter the plaintiff deposited to the credit of the defendant in the Western National Bank upon account of the bonds of the city of Key West, the sum of $97,500. On the twelfth of June the plaintiff received Oppenheim's note payable two months after date for $100,000, which recited that it held as collateral security bonds of the city of Key West for $100,000 and a certificate of deposit for $20,000 by the John White Bank. It further appeared that these notes were renewed from time to time until

finally, on the 11th of November, 1890, a note was given in renewal whereby on demand he promised to pay the plaintiff $100,000, with interest at the rate of six per cent per annum, and six per cent per annum additional, having deposited with said trust company as collateral security for the payment of this note, and also of all other present or future demands of any kind of the said trust company against the undersigned, due or not due, the property, as per memorandum envelope herewith, dated November 11, 1890, and two envelopes were produced by the plaintiff dated November 11, 1890, evidently referring to this loan, upon one of which the collaterals mentioned were "100,000 bonds of City of Key West, Florida," and upon the other was " $98,000 bds., City of Key West, due 1920, 20,000 Ctf. of Deposit in John White Bank."

It is conceded that during this time two of the bonds had been paid, reducing the number held by the plaintiff to ninety-eight instead of one hundred. This note also authorized the sale of the collateral in case of non-payment and with authority to the plaintiff to become the purchaser at such sale.

Upon these facts appearing the court directed a verdict for plaintiff as already stated.

It is claimed upon this appeal that the evidence was sufficient to entitle the jury to find that the plaintiff was not a *bona fide* holder of the certificate for value, and, therefore, could not recover in this action; and that plaintiff knew that Oppenheim was not a depositor of $20,000 in defendant's bank; and that the certificate was transferred to the plaintiff in violation of restrictions imposed by the maker as to the use it could be put to, and that the entire principal debt in the transaction in which the certificate came into the plaintiff's hands was paid when it matured; and, also, that the certificate of deposit was not collateral to the note which the plaintiff now holds; and, further, that the plaintiff had no title to this certificate of deposit which authorized it to bring suit, the condition of the pledge being that it should be sold.

The objections as to the *bona fides* of the plaintiff depend largely upon the claim made by the defendant that the plaintiff and Oppenheim were jointly interested in the speculation in the bonds. But we fail to find from the evidence any such unity of interest. It is true that the plaintiff expected to act as financial agent in reference to

these bonds, and to receive a commission therefor, which expectation may have been the inducing cause for the loaning of the money to Oppenheim, but that loan to Oppenheim in no way made them jointly interested in the speculation, any more than where a customer places his stock in the hands of a broker for sale upon commission, they are jointly interested in the transaction because the broker receives a commission upon the sale.

Neither is the fact that the plaintiff knew (if it did know) that Oppenheim had no deposit with the John White Bank, and that the certificate in question was issued for the accommodation of Oppenheim, any defense to its claim. An accommodation note would be no accommodation unless it could be used to obtain credit upon it. It is issued for the particular purpose, and if used for that purpose the holder of the note who has parted with value upon the faith of it, certainly has a legal claim to recover upon it. There is no evidence tending to show that the plaintiff had any notice of any restriction which the defendant placed upon the certificate, nor of any false representations which were made to defendant, as he alleges, in order to obtain his signature to the certificate. Nor is there any evidence that the plaintiff knew that Oppenheim had no deposit with the bank in question.

The claim that the certificate was made by the defendant at the instance, and upon the request of the plaintiff, is not supported by the evidence. It is true that the plaintiff agreed to accept as security for the loan a certificate of deposit issued by the John White Bank. But that that is to be tortured into a request that the John White Bank should issue a certificate to Oppenheim to accommodate the plaintiff seems to require a considerable stretch of the imagination.

Our attention is called to the case of *Produce Bank* v. *Bache* (30 Hun, 351), decided by the General Term in the first department in 1883, in which it appeared that the respondent was a married woman who had indorsed a draft drawn by another person, and, by the terms of the indorsement, had declared it to be a lien on her real and personal estate; her defense was want of consideration; the indebtedness for which the draft was given had originated in discounts made by the bank, but for the payment of which the respondent was not liable; that indebtedness was carried along by renewals until the draft in controversy was given.

It appears from the language of the court that the defendant indorsed the draft at the instance and request of the president of the bank, for the sole purpose of having the paper in the bank appear in form to be a proper and legal evidence of an existing indebtedness, and that the intention upon the part of the bank not to indorse the contract was communicated to the indorser.

We might refer to the case of *Garfield Nat. Bank* v. *Colwell* (57 Hun, 169) as being a much more recent authority in support of this proposition ; but it has no application to the case at bar.   The plaintiff made no representation or promise to the defendant or to his bank.   An offer was made of a certificate of $10,000 apparently, and the plaintiffs said they would take a certificate of $20,000. That was furnished ; the money was loaned, and the defendant got the money.

Neither has the claim that the loan has been paid, and the collateral thereby released, any better foundation.   The principle is too well settled to need the citation of authorities that the renewing of notes, from time to time, in no way extinguishes the original debt ; it is simply an extension of the time of payment and a change as to the evidence of the debt, and all collaterals pledged for the payment would remain as security notwithstanding the extension of the time of payment.   It is apparent, from the manner in which this transaction was carried on, that there was no money except that which the plaintiff furnished, unless, perhaps, some interest which Oppenheim paid.

The only remaining question is as to the authority of the plaintiff over the collateral, being limited by the provision for the sale thereof contained in the note of November 11, 1890.   It seems to us apparent that this provision was not a limitation upon the rights of the plaintiff in respect to this collateral, but rather an expansion of those rights, giving plaintiff a power of sale and a right to purchase independent of the rights which a pledgee of securities of this kind would otherwise enjoy.

Upon the whole case we think that no error was committed, and that the judgment should be affirmed, with costs.

O'BRIEN and PARKER, JJ., concurred.

Judgment affirmed, with costs.