Hawkins, Receiver, *et al. v.* Fourth Nat'l Bank, etc., *et al.*

HAWKINS, RECEIVER, ET AL. *v.* THE FOURTH NATIONAL
BANK OF NEW YORK ET AL.

[No. 18,133. Filed March 29, 1898.]

BILLS AND NOTES.—*Collateral Security.*—A machine company exe-
cuted to a bank three notes aggregating $19,000.00, and secured
them by collateral with the privilege of substituting other collateral.
The bank desired to sell one of the notes, and in order to escape
indorsement, had the machine company to execute a new note pay-
able to itself, and indorse the same in blank to the purchaser. The
purchaser of the note took it with knowledge that it had been so
executed to avoid indorsement, and with the agreement that it was
secured by the collateral notes which were held by the bank. The
note was renewed at maturity and made payable to the purchaser.
*Held,* that the purchaser of the note could enforce a lien on the
notes held by the bank as collateral. *pp. 119-124.*

FRAUD.—*A Question of Fact.*—Fraud is a question of fact, and when
essential to a cause of action or defense thereto, must be found as a
fact, and not left to be inferred as a matter of law. *p. 124.*

BANKS AND BANKING.—*Authority of Cashier to Sell Notes.*—*Presump-
tion.*—Where the facts stated in a special finding show that the
cashier of a bank sold a particular note, it will be presumed that
the sale was authorized, or was ratified by the board of directors.
*p. 125.*

SAME.—*Authority of Cashier to Sell Note.*—*Estoppel.*—Where the
cashier of a bank sold a note, and the proceeds were received and
retained by the bank, the bank and its receiver are estopped from
denying the authority of the cashier to make such sale. *pp. 125, 126.*

SPECIAL FINDING.—*Evidentiary Facts.*—*Venire de Novo.*—Where a
special finding includes evidentiary facts which are not sufficient
to establish any inferential fact within the issues that is not stated
in the finding, a motion for a *venire de novo* is properly overruled.
*p. 127.*

From the Marion Superior Court. *Affirmed.*

*John W. Kern,* for appellants.

*Ayres & Jones* and *J. P. Baker,* for appellees.

MONKS, J.—The Fourth National Bank of New
York brought this action against the Indianapolis
National Bank, Edward Hawkins, receiver of the In-
dianapolis National Bank, the Eagle Machine Works

Company and the First National Bank of Knights-town, upon a note executed by the Eagle Machine Works Company to the Indianapolis National Bank, and by it indorsed to said Fourth National Bank of New York, and to enforce a lien on certain notes pledged to secure the same which were in the hands of Hawkins, receiver.

The First National Bank of Knightstown filed an answer to said complaint, and also a cross-complaint against its codefendants and said plaintiff upon a note executed by said Eagle Machine Works Company, alleging that said note was secured by said notes in the hands of Hawkins as receiver. The defendants to said complaint and to said cross-complaint each filed answers thereto.

After issues were joined, the court, at the request of appellants, made a special finding of facts, and stated its conclusions of law thereon, and, over a motion for a *venire de novo* and a motion for a new trial, rendered judgment in favor of the Fourth National Bank of New York, against the Eagle Machine Works Company, and the Indianapolis National Bank, for the amount of said note and interest, and in favor of the First National Bank of Knightstown, against the Eagle Machine Works Company for the amount of the note, principal and interest, sued upon in said cross-complaint; and that said banks recovering said judgments have a lien on the collateral notes held by Hawkins, receiver, and any money collected thereon by him, and that the same be first applied to the payment of certain costs and expenses, and then to the payment of the judgment in favor of the First National Bank of Knightstown, and the interest thereon, and then to the payment of the judgment in favor of the Fourth National Bank of New York and the interest thereon.

The errors assigned and not waived call in question each conclusion of law, and the action of the court in overruling appellant's motion for a *venire de novo.*

For convenience, the Indianapolis National Bank will be called Indianapolis Bank, The Eagle Machine Works Company will be called Machine Company, the First National Bank of Knightstown will be called Knightstown Bank, and the Fourth National Bank of New York will be called New York Bank.

The special finding, so far as necessary to the determination of the questions presented is substantially as follows: In 1893 the Indianapolis Bank held three notes on the Machine Company, one for five thousand dollars, one for eleven thousand dollars, and the other for three thousand dollars, which notes were secured by promissory notes, amounting in all to $19,000.00, taken by the Machine Company in the usual course of business, and deposited by said company with said bank as collateral security for said indebtedness; and it was further agreed that, as such collateral notes became due and payable, said Machine Company was to have the right to withdraw the same from said bank upon depositing as collateral with said bank other unmatured notes of equal amount, to the end that the aggregate amount of such collateral notes should be kept to the amount of such indebtedness, to wit, $19,000.00.

The Indianapolis Bank and the Knightstown Bank entered into negotiations for the sale to said last named bank of said five thousand dollar note; and in order to avoid the indorsement of said note by said Indianapolis Bank, and reporting the rediscount of the same to the Comptroller of the Currency, the Indianapolis Bank procured the Machine Company to execute a new note for the same amount, bearing the same date, February 1, 1893, and due at the same

time, May 2, 1893, and of the same tenor and effect
as the five thousand dollar note held by said Indi-
anapolis Bank, with the exception that said new note
was executed by said Machine Company payable to it-
self and was by it indorsed in blank; that said new note
was so executed by the Machine Company to said Indi-
anapolis Bank in lieu of said five thousand dollar
note then held by said bank, and was secured by the
same collateral notes, amounting to $19,000.00, as
the note for which it was substituted, which was
thereupon canceled. The new note so taken was sold
and delivered by the Indianpolis Bank to the Knights-
town Bank, without indorsement, for which the pur-
chasing bank paid the selling bank $4,930.00 in cash,
which it retained, and has returned no part thereof.
And the bank purchasing said note received the same
knowing it had been so executed to avoid such in-
dorsement. This note was renewed at maturity by
the advice of the Indianapolis Bank.

On May 31, 1893, said Indianapolis Bank sold and
indorsed for value received to the New York Bank
said note calling for $11,000.00, which was due and
payable July 22, 1893. When said note became
due $7,000.00 thereof was renewed, payable to the
Indianapolis Bank, and by it indorsed to the New York
Bank. The said Indianapolis Bank failed and closed
its doors July 24, 1893. Up to the time of the said
failure said Machine Company kept up the aggregate
amount of said notes so held as collateral security for
said indebtedness of $19,000.00 to the full sum of
$19,000.00. After the failure of said bank Edward
Hawkins was duly appointed receiver thereof, and
entered upon the discharge of his duties as such, and
took possession of all the assets of said bank includ-
ing the notes held by said bank at the time of said
failure as collateral security for said indebtedness of

$19,000.00, against the Eagle Machine Company, a part of which had been sold to the Knightstown Bank, and a part to the New York Bank as herein before set forth.

At the time of the failure of the said Indianapolis Bank, it was the owner and holder of notes amounting to $7,000.00, which, with the note for $5,000.00, held by the Knightstown Bank, and the note for $7,000.00, held by the New York Bank, represented the indebtedness of the Machine Company, to secure which said Indianapolis Bank held said collateral notes amounting to $19,000.00, received from the said Machine Company. At the time of the purchase of said note for $5,000.00 by said Knightstown Bank from said Indianapolis Bank, and at the time of the renewal thereof, said Knightstown Bank had no knowledge or information that said Indianapolis Bank was not solvent.

Prior to the failure of said bank said Machine Company became indebted to said bank in the further sum of ten thousand dollars, evidenced by a promissory note executed by said company to said bank, which note was wholly unsecured.

The court, among other conclusions of law, found that the Knightstown Bank and the New York Bank each had a lien on the collateral notes and the proceeds thereof in the hands of Edward Hawkins, as receiver of said Indianapolis Bank, and that they were entitled to enforce said liens; that, as between the two banks, the lien of the Knightstown Bank, upon said collateral notes and the proceeds thereof, was superior to the lien of said New York Bank, and that the proceeds of said collateral notes, after paying certain costs and expenses, be applied first to the payment of the amount due the Knightstown Bank, with interest, and next to the amount due the New York Bank, with interest.

It is first insisted by appellants that the Knights-town Bank had no lien upon said collateral notes to secure the note for $5,000.00 purchased of the Indian-apolis Bank, nor any right to receive any of the proceeds thereof; and that the conclusion of law that said bank had such lien, and was entitled to enforce the same, was erroneous.

Upon the facts found the collateral notes in the possession of the Indianapolis Bank were held by it to secure the indebtedness of the Machine Company to said bank, amounting to $19,000.00, evidenced by three promissory notes, one for $5,000.00, one for $11,000.00, and one for $3,000.00. When the bank sold and delivered the new note for $5,000.00, executed by the Machine Company in lieu of the note for $5,000.00 then held by the Indianapolis Bank, to the Knights-town Bank (which new note was so executed by the Machine Company to enable said bank so to sell it), the lien of the indebtedness evidenced by said note passed to said Knightstown Bank. The rule is that the security being the mere incident of the indebtedness, an assignment of the debt passes the title in the pledge to the assignee of the debt, unless the parties agree otherwise. 18 Am. and Eng. Ency. of Law (1st ed.), 663; 2 Am. and Eng. Ency. of Law (2nd ed.), 1084; Jones on Pledges, section 418; 1 Daniel on Negotiable Inst. (4th ed.), sections 748, 834; Colebrooke on Coll. Securities, section 79, p. 107; *Stearns* v. *Bates*, 46 Conn. 306; *Hormer* v. *Savings Bank*, 7 Conn. 478; *Esty* v. *Graham*, 46 N. H. 169. In 2 Am. and Eng. Ency. of Law (2nd ed.), p. 1084, it is said, "For it is a familiar and well settled rule of law that the assignment of a debt carries with it every remedy and security for such debt available by the assignor as incident thereto." In this case, however, the special finding does not show that it was agreed that the title to the

collateral notes should not pass, but, on the contrary, the facts found show that it was agreed between the parties that said note for $5,000.00 was secured by said notes held by said Indianapolis Bank as collateral security, and that the same passed to said Knightstown Bank as the purchaser of said note for $5,000.00. The fact that the Indianapolis Bank did not deliver to the Knightstown Bank the notes held as collateral security, or any part thereof, did not deprive the last named bank of its interest or title to the notes held in pledge by the first named bank, for the reason that said Indianapolis Bank, after said $5,000.00 note was sold, held said collateral notes as agent or trustee of the Knightstown Bank and itself. Jones on Pledges, section 418, note 4. The renewal of said note for $5,000.00 at maturity, and making the same payable to the Knightstown Bank, did not affect or change the right of said bank to enforce its lien against said collateral notes. Jones on Pledges, section 541. Colebrooke on Collateral Securities, section 14, section 79 on p. 107; *Dayton National Bank* v. *Merchants National Bank,* 37 Ohio St. 208, 217; *Holland Trust Co.* v. *Waddell,* 75 Hun 104, 26 N. Y. Supp. 980.

The rule is stated in Colebrooke on Coll. Securities (1st ed.), p. 107, thus: "The securities pledged for a debt follow it, in equity, no matter how the debt be modified, or into whose hands it may come. Until the debt is paid, the pledge accompanies it, and remains for its repayment, and is available to all who may acquire title thereto."

Nor did the fact that the Machine Company had the right to exchange or substitute other notes as collateral security for said indebtedness for those already held as collateral affect or change such right. Colebrooke on Coll. Sec., section 15.

Under the facts stated in the special finding, the Indianapolis Bank did not repledge the notes held by it as collateral security for said indebtedness of the Machine Company, evidenced by said three notes, for $5,000.00, $11,000.00 and $3,000.00, respectively, nor did it attempt to do so, but said collateral notes remained as security for said indebtedness after $5,000.00 thereof became the property of the Knightstown Bank, and $11,000.00 thereof became the property of the New York Bank. Jones on Pledges, section 418; Colebrooke on Coll. Sec., section 79, p. 107; 2 Am. and Eng. Ency. of Law (2nd ed.), 1084. The Indianapolis Bank, at the time of its failure, held said collateral notes as the trustee for itself and the other banks, holders of the remainder of said debt, to secure the payment of which said collateral notes were pledged.

It is insisted by appellants that the finding that the Knightstown Bank received said note for $5,000.00, knowing that said note had been taken in the manner and form stated in the special finding so that it might be forwarded without being indorsed by the Indianapolis bank shows that a fraud was successfully accomplished.

In this State fraud is a question of fact, and, when essential to a cause of action or a defense thereto, must be found as a fact, and not left to be inferred as a matter of law. *National State Bank* v. *Vigo County National Bank*, 141 Ind. 352, 357; *Hutchinson* v. *First National Bank*, 133 Ind. 271, 280, and cases cited. It is not stated in the findings that the Indianapolis Bank sold said note for $5,000.00 to said Knightstown Bank with any fraudulent intent or for any fraudulent purpose, nor that the said Knightstown Bank had any notice or knowledge of such fraudulent intent or purpose. On the contrary it is stated in the special

findings that said Knightstown bank had no knowledge or information when it bought said note that said Indianapolis Bank was insolvent, nor had it any such knowledge or information when said note was renewed, and that it paid $4,930.00, a valuable consideration, for said note. There is nothing in the special finding that in any manner impeaches the fairness or legality of the transaction between the Knightstown Bank and the Indianapolis Bank, so far as the first named bank is concerned.

It is insisted, that, under the statute of the United States, section 5209, R. S. U. S., the cashier for the Indianapolis Bank had no power to sell said note to the Knightstown Bank unless such authority was conferred upon such cashier by the board of directors of said bank, that the burden of proving such authority was upon the Knightstown Bank, and as the special finding does not state that such authority was conferred by the board of directors upon the cashier, it is equivalent to a finding that such was not conferred by the board of directors of said bank. The board of directors of the Indianapolis Bank had the power to authorize the cashier of said bank to sell said note for $5,000.00 to the Knightstown Bank, and the facts stated in the special finding show that he did on behalf of said bank so sell said note, and the presumption from said facts is that said sale as made was authorized, or that the same was ratified by the said board of directors until the contrary appears. *National State Bank* v. *Vigo County National Bank*, 141 Ind. 352, 355, and authorities cited; *Smith, Tr.*, v. *Wells Mfg. Co.*, 148 Ind. 333, 343-344, and authorities cited; *Peoples Bank* v. *National Bank*, 101 U. S. 181, 183; 17 Am. and Eng. Ency. of Law, 148; 3 Am. and Eng. Ency. of Law (2nd ed.), 843, 844. But even if the special finding stated that said cashier was not au-

thorized by the board of directors to sell said note on behalf of said bank, as it is found that the said Indianapolis Bank received $4,930.00 for said note and retained the same and has returned no part thereof, said bank and its receiver are estopped from denying that said cashier was authorized by the board of directors to sell said note, or that the sale was ratified by said board. *People's Bank* v. *National Bank, supra.*

In said last named case the vice president of a National Bank without any authority from the board of directors, guaranteed the payment of certain notes, the proceeds of which said bank received and retained, and in an action upon said guaranty the Supreme Court of the United States held that said National Bank had the power to give said guaranty, and that it is presumed that the vice president was authorized by the board of directors to execute said guaranty, and that the bank by its retention of the proceeds of the notes, the payment of which was guaranteed, was estopped from denying such authority; that such retention of the proceeds rendered the act of its officers as binding as if it had been expressly authorized. The court, at page 183, said: "We see no reason to doubt that, under the circumstances of this case, it was competent for the defendant [a National Bank] to give the guaranty here in question. It is to be presumed the vice president had rightfully the power he assumed to exercise, and the defendant is estopped to deny it. * * * All the parties engaged in the transaction and the privies were agents of the defendant. If there were any defect of authority on their part, the retention and enjoyment of the proceeds of the transaction by their principal constituted an acquiescence as effectual as would have been the most formal authorization in advance, or the most formal ratification afterwards."

It is next insisted by appellants that the motion for a *venire de novo* should have been sustained because the third finding sets forth the substance of the letters that passed between the two banks in regard to the sale of the note for $5,000.00, and is a mere recital of the evidence. The third finding states in detail the steps taken by said banks in the sale of said note including the substance of the correspondence between said banks in regard to such sale, and that said note was delivered to the purchasing bank for which it paid $4,930.00. It clearly appears from the facts stated in said finding that the Indianapolis Bank sold and delivered said note for $5,000.00 to the Knightstown Bank, for which the last named bank paid the first named bank $4,930.00, in cash, which the first named bank retained, and has returned no part thereof. Whatever evidentiary facts said finding may contain, they are not sufficient to establish any inferential fact within the issues that is not stated in said finding.

The court did not err, therefore, in overruling the motion for a *venire de novo*, although the special finding may have stated some evidentiary facts. *Boyer* v. *Robertson*, 144 Ind. 604, 608, and cases cited. Finding no available error in the record the judgment is affirmed.