(32 Misc. Rep. 410.)

### ST. LAWRENCE UNIVERSITY v. FARMER et al.

(Supreme Court, Special Term, St. Lawrence County. August, 1900.)

1. MORTGAGES—DESCRIPTION OF NOTE—SUFFICIENCY.

   A mortgage described a note dated May 6, 1895, and intended to be secured thereby, as being dated May 15, 1895, but the note in question was the only one in existence between the parties. *Held*, that it did not thereby fail to identify it, so as to render the mortgage invalid.

2. SAME—FORECLOSURE—SURPLUS PROCEEDINGS—REFORMATION OF MORTGAGE.

   Though, in proceedings between junior mortgagees to determine conflicting claims to a surplus, the court has no power to execute a formal reformation of the mortgage of one of the contestants, misdescribing the note secured thereby, it does not prevent an inquiry into the facts in relation thereto, and an equitable determination of the rights of the parties.

3. SAME—SECURITY FOR ACCOMMODATION INDORSER—CHANGE IN FORM OF OBLIGATION—EFFECT.

   A mortgage executed to secure the accommodation indorser of a note is not invalidated by a mere change in the form of the indorser's obligation, without actual payment, as where the indorser joins the mortgagor as accommodation maker in the execution of a new note in renewal of the original note, which was thereby extended; the last note not operating as a payment affecting the rights of the parties, unless taken under such circumstances as show an express agreement to that effect.

Action to foreclose a mortgage by the St. Lawrence University against Judson L. Farmer and others. Proceedings by motion to determine the conflicting claims by defendants William E. and George W. Dunn and Anna A. Malterner, junior mortgagees, to a surplus arising from the sale. Judgment for the latter.

Ledyard P. Hale, for Anna A. Malterner.

Almeron Z. Squires, for William E. Dunn and George W. Dunn.

RUSSELL, J. The surplus of $319.66, arising upon the foreclosure sale in this action, is the subject of the controversy on this motion; the claimants being Mrs. Malterner and the defendants Dunn. Both are junior mortgagees,—Mrs. Malterner by a mortgage given by Farmer the 18th of May, 1895, acknowledged the 29th of November, 1895, and recorded the 23d of December, 1895, and the Dunns by mortgage executed the 5th day of December, 1898, and recorded the 13th day of December, 1898. On the face, therefore, of the record, the Malterner mortgage is a superior lien to the Dunn mortgage. But the former security was given in pursuance of an oral agreement to indemnify and save harmless Mrs. Malterner from various possible losses, among other things for her accommodation indorsement of a note to be made by Farmer for $150, upon which Mrs. Jessie C. Hammond was to loan Farmer that sum for one year. The money was loaned Farmer, and was secured to the lender by the note for $150, signed by Farmer and indorsed by Mrs. Malterner, payable in one

year, with interest. In pursuance of his oral agreement, Farmer undertook to give a mortgage upon the lands theretofore mortgaged to the plaintiff in this action, and, by some misconception or inadvertence, the security clause reads as follows:

"This grant is intended as security for the payment of the sum of $600, as follows: Second party has indorsed for first party one note for $150, dated May 15, 1895, running to * * *, and one note for $200, dated May 18, 1895, running to * * *. Perley C. Malterner, the deceased husband of said second party, of whom she is legatee, signed an administrator's bond with the said first party, and should the second party suffer any loss on either of said notes, or on the said bond, then there shall be due and payable upon this mortgage the amount said party has to pay or become responsible for; otherwise this obligation to be void."

There was no other note for $150 indorsed by Mrs. Malterner, and no other note of any amount payable to Mrs. Hammond than the one dated the 6th day of May, 1895. Before the Hammond note became due, at the request of Farmer, and with the consent of Mrs. Hammond and Mrs. Malterner, the pending note was surrendered on the delivery of a new note, dated May 6, 1896, payable in one year to Mrs. Hammond, or bearer, with interest, signed by Mrs. Malterner with Farmer; she signing as accommodation maker instead of indorser, because the payee did not want the trouble of a protest in case the note was not paid at maturity. Farmer became insolvent, and was unable to pay, and Mrs. Malterner had to take up the renewal note after it became due. It is accordingly claimed by the counsel for the Dunns that the mortgage did not secure in terms the liability which Mrs. Malterner incurred for Farmer on the note to Mrs. Hammond, it not properly identifying the note, and that, even if Mrs. Malterner has an equitable right to have the mortgage reformed, it cannot be done in this proceeding to adjudge the surplus money to one of the two claimants. It is also claimed by the same counsel that the giving of the new note was a payment of the former one; and, therefore, the note upon which Mrs. Malterner was liable having been discharged, and no renewal of the mortgage security given, that mortgage ceased to be of effect, as not covering a renewal note given for the same indebtedness. There can be no claim that the Dunns have superior rights as bona fide mortgagees for a valuable consideration. Their mortgage was given for advances to be made and for past-due indebtedness, and those subsequent advances amounted to only a small sum. They had constructive notice of Mrs. Malterner's mortgage, which put them upon their inquiry as to the exact condition of the security, and the state of the indebtedness or liability for which that mortgage was given. They could easily have ascertained the true facts as they existed, and do not make any assertion of being misled to their disadvantage by information or ignorance on account of the mistake in the mortgage, or the carrying of the indebtedness for the second year. They made no advances upon the faith of the Malterner mortgage being inoperative for either cause, but took their mortgage as a security, subject to whatever might be the obligation or validity of that mortgage.

The inquiry, then, comes back to the validity of that Malterner mortgage. At the time it was executed in November, 1895, it was

undoubtedly a lien to secure Mrs. Malterner against her liability as accommodation indorser upon the note then pending, although the date of that note was incorrectly stated; there being no doubt as to what note was meant. I do not think any reformation of the instrument is needed, as the note itself is sufficiently identified. As a matter of course, this court has no power in this action to execute a formal reformation of the instrument. But the province of the court is not so contracted in its construction of instruments as to prevent an inquiry into the real facts, and an equitable determination of the rights of the parties. It would be a retrogressive step in jurisprudence to compel a suspension of these proceedings until an equitable action for reformation could be determined, in which the expenses might exceed the amount of the surplus in controversy. The true application of the mortgage may be herein adjudged by the proper display of the facts upon which the mortgage was based. Tator v. Williams, 20 Hun, 131. Nor do I believe the exchange of the form of indebtedness at the expiration of the first year destroyed the life of the security taken. The essence of the original agreement was to secure Mrs. Malterner for her liability, if she would become responsible to the creditor that the loan desired should be repaid. On the faith of that agreement, she did take upon herself that liability, and no court should hold that a mere change of the form of the obligation, without actual payment, should exempt Farmer from the lien of that mortgage security given to her. Both he and she undoubtedly supposed the mortgage to be a continuing security until the debt was paid in fact by the mortgagor. Otherwise, she never would have signed the extension of credit. As between the two, she could undoubtedly, at the expiration of that term of credit when she had to pay the note, have proceeded against Farmer upon the mortgage security. At that time the rights of the defendants Dunn had not in any manner accrued, and Farmer could confer upon them no interest whatever in the mortgaged premises which was not subject to the mortgage he had given Mrs. Malterner. It will not answer to confound a note, bond, or other written instrument with the thing it represents. The property interest held by the creditor from the moment of the advance to the time of payment was the loan of money. That loan was secured and was evidenced by a note signed by Farmer and indorsed by Mrs. Malterner for the first year, and a joint note for the same thing during the second year. The destruction of either note did not destroy the value of the property interest. Nor does a renewal in any form, except where it is taken under such circumstances as show an express agreement to accept the new form of indebtedness as absolute payment, ever operate as a payment to affect the rights of parties. Trust Co. v. Waddell, 75 Hun, 104, 26 N. Y. Supp. 980, affirmed on the opinion of the general term 151 N. Y. 666, 46 N. E. 1148. And the language of the mortgage fairly covers the second note. It becomes due if she "has to pay or become responsible" for the note. She had to do one or the other at the end of the first year,—"pay or become responsible." Farmer could not pay, so she had to agree to pay as a joint maker.

I adjudge Mrs. Malterner to have the first claim on the surplus for the amount due to her, with interest and costs of this application; the balance to be paid to the defendants Dunn. Ordered accordingly.