C. Davis Miller, in equity, *vs.* Mark H. Hilton, and wife.   | 88   429|
                                                              | 93   301|

Somerset.   Opinion February 11, 1896.

*Equity.   Voluntary Conveyance.   Payment.   Presumption.*

Circumstances may rebut the presumption that a note given for an anteced-
ent debt is intended as a payment.  Such presumption is overcome when
the circumstances show that it was merely a renewal of the same indebted-
ness and was so intended by the parties.

A deed was given by husband to wife subsequent to his debt to the plaintiff.
*The court considers,* upon the evidence, that it was a voluntary conveyance,
without consideration and in fraud of the plaintiff.

In equity.

This was a bill in equity praying that a deed from the defend-
ant, Mark H. Hilton, to his wife, Mary H. Hilton, dated July
21, 1881, might be declared fraudulent and void as to the
plaintiff.   At the hearing on bill, answers, and oral evidence in
the court below, the presiding justice dismissed the bill and the
plaintiff took an appeal.

The case appears in the opinion.

*E. N. Merrill and G. W. Gower,* for plaintiff.

*S. J. and L. L. Walton,* for defendants.

Sitting : Peters, C. J., Walton, Foster, Haskell, Wis-
well, JJ.

Haskell, J.   The plaintiff had levied an execution against
Hilton upon land previously conveyed by him to his wife, and
brings this bill in equity to perfect his title upon the ground
that the conveyance was fraudulent as to him.   The conveyance
was given July 21, 1881.   Prior to the conveyance Hilton was
owing two promissory notes to one Folsom, who had indorsed
and delivered the same to the plaintiff, of which Hilton was well
aware.   February 27, 1887, Hilton gave the plaintiff a new note
in exchange for the two Folsom notes held by the plaintiff, and
upon this note judgment has been rendered for damages and

costs amounting to $592.39. It was satisfied by execution and levy upon the land in question.

I. It is said that the new note, given after the conveyance to the wife, was payment of the two Folsom notes and became a debt contracted since the conveyance to the wife; but that is not the effect of the transaction. All the circumstances rebut any presumption of that sort, and show that it was merely a renewal of the same indebtedness and was so understood by the parties.

II. It is said that the deed to the wife was for $3000 consideration paid at the time. The wife claims to have had $1000 in a stocking bag that she began to accumulate soon after their marriage in 1860, and that it was in old state bills; $1000 more in a calico bag, greenbacks and national bank bills; and another $1000 in a pillow case. She claims to have accumulated this by wages at two dollars and fifty cents a week that her husband had paid her, and from $600 that she had when married. She says that the $600 was put into the stocking bag and savings added until $1000 had been accumulated, and then she began her deposit in the second bag; that the money in the stocking bag was in old state bills.

When the deed was given Hilton was owing considerable money. He had no other real estate. The wife was called as a witness by the plaintiff, and her evidence is so incredible that we cannot think it is true. If she had, in 1881, $1000 in old state bills, certainly they could not have been negotiated without remark, and without proof of the fact now in existence. The defense relies upon the payment of the $3000 taken from the three bags as a consideration for the deed to her. We cannot rely upon testimony so incredible to substantiate a consideration that would change the conveyance from a voluntary one into a bona fide sale.

After the conveyance the husband seems to have paid quite an amount of debts, and says that he had no other source from which to obtain the money. But, of course, if the defense of receiving the bag money is not believed, it is easy to see how another false theory could be set up to sustain the probability

of that one. If false, the husband must have known it and been a party to it, and, therefore, if both parties would devise that theory, they would not hesitate to invent one to show how he disposed of the money. He may have paid his debts, but concealed the source from whence he obtained it. The payments could easily be proved. The source from which the money was obtained to make them could just as easily be concealed.

The decree below must be reversed and the bill be sustained.

*Decree below reversed. Bill sustained with costs.*