## BANK v. HOLLINGSWORTH.

(Filed May 24, 1904).

1. PARTNERSHIP—*Notice—Corporations—Dissolution of Corporations.*

Where a dissolution of a firm occurs by operation of law, by the death of one of the partners, the giving of notice of such dissolution is not necessary to prevent liability from attaching to the estate of the deceased partner or of the surviving partners for any future contracts made in the name of the firm.

2. PARTNERSHIP—*Dissolution—Negotiable Instruments.*

A surviving partner has no power after dissolution to renew or endorse a firm note in the name of the firm.

3. PARTNERSHIP — *Dissolution of Partnership — Negotiable Instruments.*

A surviving partner, who, more than two years after dissolution of the firm endorsed a note in the firm name for the renewal of notes outstanding similarly endorsed, was individually liable on such endorsement, though it did not bind the firm.

4. PAYMENTS—*Negotiable Instruments.*

The giving of a note for a debt is not a payment thereof unless it is so received.

5. PARTNERSHIP — *Corporations—Negotiable Instruments—Fraud— Subscriptions—Stock.*

Where a surviving partner of a firm, who was personally liable on an endorsement of a note in the firm name without authority, organized a corporation and transferred the assets of the firm to such corporation in payment of his subscription to the corporation's stock, without intent to defraud his creditors, the corporation was not liable for such debt.

ACTION by the National Bank of Maryland against J. B. Hollingsworth and others, heard by *Judge W. A. Hoke* and a jury, at March Term, 1903, of the Superior Court of BUNCOMBE County.

On and prior to the 5th day of September, 1895, C. L. Cottrell, A. S. Watkins and W. S. Robertson, of Richmond, Va., under the firm name of Cottrell, Watkins & Co., conducted a hardware business in the city of Richmond. This firm, some years prior to said date, purchased the stock of goods of Van Gilder & Brown, of Asheville, N. C., and formed a copartnership with Joseph E. Dickerson of said city of Asheville, under the firm name and style of J. E. Dickerson & Co., for the purpose of conducting a hardware business at Asheville. The business of said firm was kept separate and apart from that of Cottrell, Watkins & Co. Dickerson had no interest in the business of the Richmond firm. On September 5, 1895, C. L. Cottrell died, and from that time until December 12, 1895, the surviving partners, both of Cottrell, Watkins & Co. and J. E. Dickerson & Co., continued the business with a view of winding up both concerns. On December 12, 1895, J. E. Dickerson purchased from the surviving partners of Cottrell, Watkins & Co. and the administrator of the deceased partner their interest in the assets and property of the firm of J. E. Dickerson & Co. At said date the firm of J. E. Dickerson & Co. was indebted to the firm of Watkins, Cottrell & Co. in the sum of about $16,000. Dickerson agreed to assume and pay this amount and all other debts of the firm of J. E. Dickerson & Co., and in addition thereto to pay to the surviving partners and the representatives of the deceased partner of the firm of Cottrell, Watkins & Co. the sum of $16,500, making a total indebtedness to the firm of Cottrell, Watkins & Co. of $32,500; of this amount he paid $8,000 in cash and thereafter $2,000, leaving an indebtedness in May, 1897, of about

$23,000. On March 7, 1896, A. S. Watkins, another member of the firm of Cottrell, Watkins & Co., died. Dickerson agreed to reduce the debt of $23,000 from time to time until within three years it was to be extinguished. On May 7, 1897, Robertson, the surviving partner, together with the administrators of Cottrell and Watkins, learned for the first time that Dickerson had organized a corporation with a capital stock of $30,000, of which he owned twenty-nine-thirtieths, the balance thereof being in the hands of W. H. Penland and S. T. Dorsett. Upon being asked for security for the indebtedness due Cottrell, Watkins & Co. as aforesaid, Dickerson agreed to deposit with Robertson his certificate of stock in the corporation of the J. E. Dickerson Company. The certificate of stock was not actually delivered at that time, as it had not been printed and issued, but on May 18, 1897, he complied with his promise by enclosing to Cottrell, Watkins & Co., at Richmond, a certificate for 290 shares of stock in the J. E. Dickerson Company, with a power of attorney signed in blank to transfer the same, to be held as collateral security for the debt of $23,000 due Cottrell, Watkins & Co. as aforesaid, and to indemnify the said firm against loss on account of certain endorsements which it had made for Dickerson on some notes of the late firm of J. E. Dickerson & Co. in one of the Richmond banks. These notes they subsequently paid. In consideration of giving this security, Dickerson was to have five years in which to pay the debt of $23,000. Robertson, the surviving partner, and the administrators of the deceased partners, at the time of taking said stock as collateral security, had no knowledge or suspicion that Dickerson was financially embarrassed. They accepted the stock without inquiry or investigation as to the financial condition of Dickerson. From the date of the receipt of said stock, May 18, 1897, until September 22, 1897, there was no communication between

Dickerson and the holders of the stock. On September 26, 1897, Robertson, surviving partner, learning of the failure of the bank in Asheville, of which Dickerson was a director, visited Asheville for the purpose of looking into the condition of the affairs of the J. E. Dickerson Company. After a conference with Dickerson and his counsel and an examination into the assets and affairs of the corporation, on September 26, 1897, the said J. E. Dickerson, in discharge and extinguishment of the said indebtedness to Cottrell, Watkins & Co., amounting to about $20,000, sold and transferred to W. S. Robertson, surviving partner of Cottrell, Watkins & Co., all of his right, title and interest in the said 290 shares of the capital stock of the J. E. Dickerson Company, which had been held by the said Robertson as collateral security as aforesaid. The remaining ten shares of the capital stock of said company was also transferred to said Robertson by the owners thereof. J. E. Dickerson also transferred and assigned all of his right, title and interest in the goods, chattels, bills, notes, and other assets of every kind and character owned by or belonging to the J. E. Dickerson Company, together with a certain sewing machine business owned by J. E. Dickerson, and all sewing machines, etc., belonging to and used by him in said sewing machine business, and all accounts due him in said business. On the same day the said J. E. Dickerson executed an assignment to the said W. S. Robertson, surviving partner as aforesaid, for all his right, title and interest in all property of every kind and character belonging to the firm of J. E. Dickerson & Co., as well as the corporation known as the J. E. Dickerson Company, and also all the capital stock of said corporation. On the same day the said W. S. Robertson, surviving partner as aforesaid, executed to J. E. Dickerson a full release of the said indebtedness due the firm of Cottrell, Watkins & Co., as aforesaid. Robertson at the same time and in the same

instrument agreed to collect certain notes therein set forth, which had been held by the firm of Cottrell, Watkins & Co., and pay the proceeds thereof to the wife and son of J. E. Dickerson in the proportions therein set forth. On September 30, 1897, Robertson, surviving partner as aforesaid, filed a bill in equity in the Circuit Court of the United States for the Western District of North Carolina against the J. E. Dickerson Company and J. E. Dickerson, trading as J. E. Dickerson & Co., reciting the matters and things hereinbefore set forth, and further setting forth that certain attachments had been levied upon the property of the J. E. Dickerson Company, against the said J. E. Dickerson, trading as J. E. Dickerson & Co., and asking that a receiver be appointed to take charge of the stock, assets and other property of the J. E. Dickerson Company and to pay all of its debts and wind up its business, and pay over to the plaintiff the balance remaining in his hands.

On September 30, 1897, an order was made in said cause appointing J. E. Rankin receiver of said corporation and of its property of every kind and character. The said receiver executed bond in accordance with the provisions of said order and took into his possession the property of said corporation. Thereafter other orders were made in said cause from time to time in regard to winding up the business of the corporation and disposition of the assets; and on November 6, 1897, an order was made allowing the attorneys of the plaintiff to enter a special appearance for the purpose of moving to dismiss the bill on the ground that the suit was collusive and was filed by both plaintiff and defendant for the purpose of defrauding other parties in interest. No further action was taken in this suit. The record shows that on February 24, 1896, J. E. Dickerson, W. H. Penland and S. T. Dorsett filed in the office of the Secretary of State articles of incorporation of the J. E. Dickerson Company, and that

pursuant thereto the Secretary issued to said company a certificate of incorporation bearing date February 27, 1896. The capital stock of the corporation was fixed at $5,000, with the privilege of increasing it to $100,000, divided into shares of $100 each. Books of subscription were opened and capital stock subscribed as follows: .J. E. Dickerson 48 shares, $4,800; S. T. Dorsett one share, $100; W. H. Penland one share, $100, and Dickerson advanced the amount to pay for the said two shares. On March 14, 1896, at a meeting of the stockholders, by-laws were adopted and the following officers elected: W. H. Penland, president; J. E. Dickerson, secretary and treasurer, and S. T. Dorsett, W. H. Penland and J. E. Dickerson, directors, and the following entry was made: "The directors were directed to consider the advisability of purchasing the stock and good will of J. E. Dickerson & Co. and of increasing the capital stock from $5,000 to $30,000." At an adjourned meeting, March 17, 1896, it was voted to increase the capital stock to $30,000, whereupon J. E. Dickerson subscribed 250 shares, and the following endorsement was made on the minutes: "The secretary and treasurer was instructed to purchase the stock and good will of J. E. Dickerson & Co. for the corporation at a valuation as shown by the inventory to be taken on August 1, 1896, the corporation to take the business after August 1, 1896." J. E. Dickerson executed his note to the corporation for the capital stock subscribed by him, and thereafter said note was paid by a transfer to the corporation of the goods and assets of J. E. Dickerson & Co. Books were opened by the J. E. Dickerson Company and the business conducted by the corporation. Certificate No. 1 was issued to J. E. Dickerson for 290 shares of the capital stock of the company, said certificate bearing date May 1, 1897, endorsed September 25, 1897, as follows: "For value received I hereby sell, assign and transfer to W. S. Robertson, surviving partner

135——36

of Cottrell, Watkins & Co., 290 shares of the within men-
tioned stock of the J. E. Dickerson Company, and hereby
constitute and appoint Fred Moore, attorney irrevocable to
transfer the said stock on the books of said company, with
full power of substitution in the premises." Signed J. E.
Dickerson and duly attested.

There was evidence tending to show that the stationery
used by the J. E. Dickerson Company, upon which was
printed J. E. Dickerson & Co., was that remaining on hand
of J. E. Dickerson & Co., and that letters were written by
the Cottrell-Watkins Company addressed to the J. E. Dicker-
son Company and J. E. Dickerson & Co. in regard to the busi-
ness transactions, etc., and that invoices were made out to
J. E. Dickerson & Co. There was also evidence that checks
were signed, in the course of business of the J. E. Dickerson
Company, in the name of J. E. Dickerson & Co. It was
also in evidence that the Asheville bank kept an account of
J. E. Dickerson and J. E. Dickerson & Co., and that notes
were endorsed in the name of J. E. Dickerson & Co.; that
actions were brought in a justice's court in the name of J. E.
Dickerson & Co. upon accounts due the firm prior to the
death of Cottrell. The business was conducted at the same
place and the sign was not removed.

On July 15, 1897, the defendant, J. B. Hollingsworth,
executed his promissory note payable to J. E. Dickerson &
Co. in  the sum of $1,900, due and payable four months
after date at the First National Bank of Asheville. Said
note was endorsed "J. E. Dickerson & Co." to the said bank,
and by it endorsed to the plaintiff, the National Union Bank
of Maryland. When the note became due, it was presented
for payment to the First National Bank of Asheville and
also to J. E. Dickerson and to the defendant Hollingsworth,
and payment thereof was refused and the note protested.

The plaintiff alleged and introduced testimony tending

to show that on May 25, 1893, the plaintiff bank, at the re-
quest of the First National Bank of Asheville, re-discounted
for said bank several thousand dollars of notes, which notes
had been discounted by and were then the property of the
First National Bank of Asheville, and which were for valu-
able consideration, and before maturity endorsed by the Ashe-
ville bank to the plaintiff, thereby becoming the property
of the plaintiff. Among said notes were several which bore
the endorsement of J. E. Dickerson & Co., which was at
that time the firm composed of J. E. Dickerson, O. L. Cot-
trell, A. S. Watkins and W. S. Robertson, one being a note
by Hollingsworth for $4,900. The plaintiff bank made an
investigation of the financial standing and responsibility of
the makers and endorsers of said notes, and ascertained that
Cottrell, Watkins and Robertson were solvent and worth
large amounts of property. Said notes were not paid at
maturity, but renewals were executed by the original makers
and made payable to the defendant J. E. Dickerson & Co.,
and endorsed by J. E. Dickerson & Co. and the First National
Bank of Asheville, and by said bank deposited with the
plaintiff, "which said renewals were accepted by the plaintiff
in settlement of the original notes referred to; and from May
25, 1893, up to and including July 15, 1897, during a long
course of business, the original makers of said notes, not
being able to meet them at maturity, executed renewals
thereof which were endorsed by the defendant J. E. Dicker-
son & Co. and by the First National Bank of Asheville, and
were afterwards deposited by the First National Bank of
Asheville with the plaintiff in payment of the notes herein-
before referred to, and that said note of $1,900 was given
in renewal of other notes, the original of which was dated
some time in the year 1893." The defendants deny that at
any time after September 5, 1895, the firm of J. E. Dicker-

son & Co. endorsed any note or notes to the First National
Bank of Asheville or the plaintiff in this action.

The plaintiff alleges that it re-discounted these notes for
the Asheville bank, relying upon the financial worth and
responsibility of Cottrell, Watkins and Robertson, and it
had no notice of the dissolution of the firm of J. E. Dicker-
son & Co., and that no such notice was ever published or
advertised in any paper in the State of North Carolina or
elsewhere, and that no notice whatever was given to the
plaintiff of said dissolution, and that the plaintiff knew
nothing of the attempted dissolution of the firm until the
failure of the bank at Asheville.  J. E. Dickerson was direc-
tor of the Asheville bank and continued such until its failure.
That the note for $1,900 was executed by Hollingsworth as
an accommodation for the purpose of enabling the J. E.
Dickerson Company to receive the proceeds thereof, and the
proceeds were credited on the books of the Asheville bank
to an account in the name of J. E. Dickerson & Co., for the
use and benefit of the J. E. Dickerson Company, and the
said J. E. Dickerson concealed the fact from the plaintiff, as
well as from the Asheville bank, of the withdrawal of Cot-
trell, Watkins & Co. from the firm, etc.  The plaintiff fur-
ther alleged that J. E. Dickerson continued the business at
the old stand, and under the old name of J. E. Dickerson &
Co., advertising to the world that the business was being con-
ducted, as it had been for many years prior thereto, under
the name of J. E. Dickerson & Co. ; and that at the time the
said J. E. Dickerson pretended to purchase from his co-part-
ners the said business, the said J. E. Dickerson and the firm
of J. E. Dickerson & Co. were largely indebted to various
persons, including the plaintiff, in large sums of money—
about $20,000—and in order to cheat and defraud the plain-
tiff and his other creditors of the money which he and the
firm of J. E. Dickerson & Co. owed them, the said Dicker-

son endeavored to have the business incorporated under the name of the J. E. Dickerson Company; that the incorporators and stockholders of said corporation were W. H. Penland and S. T. Dorsett, and that they never in fact owned any of the stock of said corporation; that it was subscribed for by them at the request of J. E. Dickerson in order to consummate the fraud. All of these allegations were denied by the defendants, J. E. Rankin receiver and the J. E. Dickerson Company.

W. H. Penland was cashier and S. T. Dorsett teller of the First National Bank of Asheville during the time that the transactions herein were being conducted. Penland and Dorsett knew of the death of Cottrell, but there was no direct evidence that the president of the bank knew it. The defendant Robertson testified that he knew nothing of the indebtedness to the Asheville bank, or to the plaintiff bank, of J. E. Dickerson or J. E. Dickerson & Co.; that he did not learn of the existence of this note until a few days before this suit was brought. He denied that there was any purpose on his part, in taking the security from Dickerson, to defraud any of the creditors of Dickerson; and that the debts of J. E. Dickerson Company have been paid in full. J. E. Dickerson further testified that the original note of $4,900, and the several notes given in renewal thereof, were made for the accommodation of the Asheville bank to enable them to discount them and to get the money on it, and that neither J. E. Dickerson & Co. nor the J. E. Dickerson Company received any benefit whatever therefrom; that the proceeds of the note were credited to Hollingsworth and afterwards charged to "bills payable."

The defendants, who answered, tendered the following issues:

1. "Were the defendants J. E. Dickerson, W. S. Robert-

son, O. L. Cottrell and A. S. Watkins copartners trading as J. E. Dickerson & Co. on the 15th of July, 1897?"

2. "Did J. E. Dickerson, W. S. Robertson, O. L. Cottrell and A. S. Watkins, under the firm name and style of J. E. Dickerson & Co., and the defendant J. E. Dickerson Company, for value, endorse the note sued on to the First National Bank of Asheville?"

3. "Did the First National Bank of Asheville thereafter endorse the note sued on to the plaintiff?"

4. "Was said note duly presented to J. E. Dickerson, W. S. Robertson, O. L. Cottrell and A. S. Watkins, trading as J. E. Dickerson & Co., when it became due, and was the same duly protested as to them?"

5. "Did the defendant J. E. Dickerson & Co. receive the benefit and advantage of the money paid by the plaintiff for the note sued on?"

6. "Did the defendant assign and sell on or about the 27th of September, 1897, at a time when it was insolvent, its assets and property to W. S. Robertson, with intent to defraud its creditors?"

His Honor declined to submit the issues tendered, and in lieu thereof submitted the following:

1. "Are the defendants J. B. Hollingsworth, J. E. Dickerson & Co. and the First National Bank of Asheville indebted to the plaintiff; and if so, in what sum?"

2. "Is the defendant J. E. Dickerson Company indebted to the plaintiff, and if so, in what amount?"

3. "Is the defendant W. S. Robertson personally indebted to the plaintiff; and if so, in what amount?"

4. "At the time the action was commenced and attachment levied, did the defendants W. S. Robertson and J. E. Rankin, receiver, hold the property levied on in this cause in trust to satisfy the present claim and demand of the plaintiff?"

The only defendants who answered were the J. E. Dickerson Company and J. E. Rankin, receiver, but the defendant Robertson, after answers filed, having been made a party defendant and served by publication of summons, adopted the answer filed by his co-defendants. The defendants excepted to the refusal to submit the issues tendered, and to the issues as submitted.

The defendants submitted a series of instructions presenting their contentions and requested the Court to charge the jury in accordance therewith, all of which were declined. His Honor charged the jury that if they believed the evidence they should answer the first, second and fourth issues "Yes." To the refusal to give the instructions asked, and to the instructions given, the defendants Rankin, receiver, Robertson, and the J. E. Dickerson Company, excepted, and appealed from the judgment rendered upon the verdict.

*Julius C. Martin* and *Charles A. Webb,* for the plaintiff.
*Moore & Rollins* and *George L. Christian,* for the defendants.

CONNOR, J. This action is prosecuted by the plaintiff for the purpose, first, of recovering a judgment against J. E. Dickerson & Co., including the defendant Robertson; second, against the J. E. Dickerson Company, and third, for the purpose of subjecting the assets of the J. E. Dickerson Company in the hands of the receiver to the payment of such judgment. There is no controversy in regard to the liability of Hollingsworth, the maker of the note, or of J. E. Dickerson and the Asheville bank as endorsers. His Honor having instructed the jury to answer the third issue "No," upon this appeal the question as to the liability of Robertson is eliminated. The personal representatives of Cottrell and Watkins not being parties, no question is presented in respect

to the liability of the deceased partners. We take it to be elementary that the death of Cottrell worked, by operation of law, a dissolution of the firm of J. E. Dickerson & Co. George on Partnership, 257; Bates on Partnership, section 610.

It is equally well settled that where the dissolution is brought about by operation of law, by the death of one of the partners, it is not necessary to give notice to prevent liability attaching to the estate of the deceased partner, or to either of the surviving partners, for any future contracts made in the name of the firm.

In *Martlett v. Jackman,* 3 Allen (85 Mass.), 287, *Bigelow, C. J.,* says: "Two text writers, however, of great learning and authority have laid down the rule that when a copartnership is dissolved by the death of one of the copartners, no notice of the dissolution is necessary, and the surviving partners are not bound by any new contract entered into by one of the firm in the partnership name after dissolution, although it is made with a person who had previously dealt with the firm, and had no notice or knowledge that it was terminated by the death of one of the members"—citing Kent's Commentaries, Story on Partnership, and Colyer on Partnership. The learned *Chief Justice* further says: "Starting, then, with the admitted proposition that death works a dissolution of a firm, and that thereby the estate of the deceased partner and his personal representatives, as well as his share of the assets of the firm, are absolutely relieved and absolved from any new contracts or subsequent transactions of the surviving partners, which are not necessary to the settlement of the joint business, the inquiry at once arises as to the effect of such a dissolution, caused by the act of God, on the relative rights and duties of the surviving copartner. One of the essential elements of the contract of copartnership consists in the right which each member has to the continuance of all his associates as mem-

bers of the firm. * * * When therefore by the death
of a member of the firm his personal liability ceases, and
his estate is by operation of law absolved from all future
contracts and transactions entered into in the name of the
firm, it would seem to follow, as a necessary consequence,
that the power of the surviving copartners to bind each other
by new contracts and engagements must at once cease. The
copartnership would then be terminated, not only as to the
deceased partner and his estate but also as to the other mem-
bers of the firm. The *delectus personarum* would not longer
exist."

It seems to be equally well settled that a surviving partner
has no power, after dissolution, to renew or endorse a note
in the name of the firm. "The dissolution operates as a revo-
cation of all authority for making new contracts. It does
not revoke the authority to arrange, liquidate, settle and pay
those before created. The implied power of the ex-partner
does not extend to giving a note or to drawing a bill in the
firm's name; nor could he bind the firm by a check in its
name. Renewals of outstanding bills or notes of the firm
stand on the same footing; and as the ex-partner could not
draw a bill or note for a firm debt, neither could he renew a
bill or note of the firm given for their debt." Daniel Neg.
Inst., section 370. "Where a note is issued by a partner after
dissolution it will not bind the other partners, even though
given for a debt due by the firm." *Ibid.*, 371. "Where the
dissolution is by the death of one of the partners, the surviv-
ing partner may endorse a note payable to the firm *in his
own name.*" *Bristol v. Sprague,* 8 Wend., 423 ; *Whitman v.
Leonard,* 3 Pick. (20 Mass.), 177 ; *Charles v. Remick,* 156
Ill., 327 ; *Woodson v. Wood,* 84 Va., 478 ; *Lusk v. Smith,*
8 Barb., 570 ; *Myatt v. Bell,* 41 Ala., 222.

In *Abell v. Sutton,* 3 East., 110, *Lord Kenyon* said, in
regard to the liability of a partner for an endorsement made

after the dissolution of the firm: "To contend that this lia-bility to be bound by the acts of his partner extends to times subsequent to the dissolution, is to my mind a most mon-strous proposition. A man, in that case, could never know when he is to be at peace and retired from all the concerns of a partnership." 22 Am. & Eng. Ency., 214. "A note given by one partner, after dissolution of the partnership, does not bind the other partner, although given in the part-nership name and in consideration or settlement of a sub-sisting partnership liability." *Haddock v. Crocheron,* 32 Tex., 277, 5 Am. Rep., 244; *White v. Tudor,* 24 Tex., 639, 76 Am. Dec., 126; *Fellows v. Wyman,* 33 N. H., 351.

It is claimed, however, that the note in suit was given in renewal of notes executed by the same persons. The conten-tion in regard to this phase of the case is: The defendant Hollingsworth executed a note payable to J. E. Dickerson & Co. for $4,900 in August, 1893, which was endorsed to and discounted by the Bank of Asheville, and endorsed to and re-discounted by the plaintiff bank. This note, at maturity, was returned to the Asheville bank, endorsed for collection, and charged to said bank by the plaintiff bank. Upon its receipt by the Asheville bank, it was credited to the plaintiff bank. The Asheville bank then procured a renewal note from the same parties, which was sent to the plaintiff bank for re-discount. It was in evidence that the plaintiff bank was under no obligation to re-discount the note thus taken in renewal. It would seem that each re-discount by the plain-tiff bank was a separate and distinct transaction. It was in evidence that each note, as it was sent to the Asheville bank and a new one taken, was marked "paid" and surrendered to the makers. Whether these transactions, resulting in the execution of the note in suit, operated as a payment of the original note, it is not necessary to decide. What con-stitutes a payment, otherwise than by money, is usually a

mixed question of law and fact, dependent frequently upon the intention of the parties. It is undoubtedly true that the renewal of the note, secured by mortgage or collateral, will not operate to discharge the security. It is equally well settled that the giving of a note or draft for an existing indebtedness does not operate, unless so agreed by the parties, to extinguish the original indebtedness, and upon the dishonor of the note or draft the creditor may sue upon the original consideration. "A note given by all the parties to pay for the goods delivered would not extinguish the original undertaking like a bond or judgment taken for it. The plaintiffs might still maintain their action for goods sold and delivered, provided they produced and delivered up the note on trial, or proved it was destroyed." *Wilson v. Jennings,* 15 N. C., 90, cited in *Mauney v. Coit,* 86 N. C., 471. "The general doctrine is that the mere giving of a note for a debt is not a discharge or payment of the debt, and the note may be surrendered and a recovery had on the debt. But, if there are any facts tending to show that the note, even when given by one of several joint debtors, was received in payment of the debt, then it becomes a question for the jury to determine whether it was so received, and if they find that it was, *then* no action can be maintained on the debt." *Lee v. Fountain,* 10 Ala., 755, 44 Am. Dec., 505.

In *Spear v. Atkinson,* 23 N. C., 262, the plaintiffs sold a bill of goods to the defendants for which they gave their promissory note. Afterwards one of the defendants drew a bill of exchange in favor of the plaintiffs and took up the promissory note. The bill was presented for payment and dishonored. There was no proof that the bill had been returned to the drawer, or that the plaintiffs ever offered to surrender it at the trial. In an action in assumpsit on the original bill of goods, the plaintiffs were nonsuited and the judgment affirmed, *Daniel, J.,* saying: "If the plaintiffs

therefore had surrendered the bill, even on the trial, they might have recovered upon the original consideration; for the taking of the note first, and then the bill, did not merge the original consideration, as a bond would have done."

The right of the creditor in such case is to sue upon the original consideration or contract. If, by any act of his, either of the original debtors is released, as by extending the time of payment upon valuable consideration or otherwise, such defense must be set up by such debtor. This action being upon the note executed July 15, 1897, more than two years after the death of Cottrell and the dissolution of the partnership, and also after the purchase by Dickerson of the interest of the surviving partners in the assets of the old firm of J. E. Dickerson & Co., the action cannot be maintained as upon a bond endorsed by the firm of J. E. Dickerson & Co. J. E. Dickerson is of course individually liable, and the fact that he endorsed the note as J. E. Dickerson & Co. in no manner affects his individual liability. It would be a singular result, and work a great hardship upon partners, if they could be bound upon endorsements made by their late partners under the circumstances existing in this case.

The plaintiff, however, says that it is entitled to judgment against the corporation, the J. E. Dickerson Company, and his Honor was of that opinion. This contention is based upon the theory that it permitted its business to be conducted in the name of J. E. Dickerson & Co.; that the business sign was never changed, the same stationery was used, goods were bought and sold in the name of J. E. Dickerson & Co., the correspondence was carried on in that name and the account at the bank was kept in that name. There can be no question as to the validity of the articles of incorporation. Whatever may have been the motive of Dickerson in forming the corporation, it became a *de jure* as well

as a *de facto* corporation, and could only be bound upon contract made in its corporate name and for corporate purposes, or for debts for which it had received the consideration. This note was never payable to the corporation, was not executed in consideration of any debt due the corporation, was never endorsed by any officer of the corporation in his official capacity, and it is difficult to perceive how it could have become liable *upon the cause of action* set forth in the complaint, that is, the promissory note of Hollingsworth. The cashier of the bank, its teller, and one of its directors, knew of the existence of the corporation, and knew that it had purchased the assets and stock of J. E. Dickerson & Co., and that J. E. Dickerson & Co. had ceased to exist in respect to the hardware business. It is not necessary for us to decide to what extent the knowledge of these persons is to be imputed to the bank, as fixing it with notice of the status of the parties. Certainly, if his Honor was correct in telling the jury that, upon the evidence, the firm of J. E. Dickerson & Co. was liable upon the endorsement, this would exclude the idea that the J. E. Dickerson Company was liable upon the same endorsement. It must be kept in mind that this action is upon *the endorsement upon the note, and not upon an open account* or other form of indebtedness by the corporation to the Asheville bank. In order to maintain its action against the J. E. Dickerson Company, the plaintiff must connect the corporation with and make it a party to the note of Hollingsworth, because it was only in this way that it acquired any right of action. We therefore conclude that, upon the issue as submitted to the jury, and upon the evidence introduced by the plaintiff, his Honor was in error in charging the jury to answer the second issue in the affirmative.

The plaintiff says that however this may be, J. E. Dickerson was, in any point of view, personally liable upon the

endorsement, and that he formed the corporation for the purpose of defrauding his creditors; that pursuant thereto, and in execution of such fraudulent purpose, he transferred his property to the corporation; that the transfer of the stock, followed by the absolute sale thereof to the defendant Robertson, was a fraud upon his creditors. For the purpose of examining this phase of the case, the intent with which Dickerson *formed the corporation of J. E. Dickerson Company* is material only as a circumstance or fact to be considered by the jury in connection with other facts. He had a legal right to do so. In the transfer of the assets of J. E. Dickerson & Co. to said corporation, and taking in payment therefor the stock of said corporation, he committed no fraud upon his creditors unless done with a fraudulent intent. The shares of stock represented the property which he put into the corporation, and was liable for his debts as the property would have been. The deposit of this stock as collateral security for the debt due Cottrell, Watkins & Co. was based upon a valuable consideration, and was a valid transaction as against his other creditors in the absence of any fraudulent intent. The subsequent sale of the stock, in consideration of the release of the indebtedness to Cottrell, Watkins & Co., was, in the absence of fraud, valid against all persons except the creditors of the J. E. Dickerson Company. The payment of these creditors was assumed by Robertson, and it is in evidence that all of the creditors of the corporation, proving their claims pursuant to the orders in the suit in equity, have been paid.

The plaintiff, however, says that the corporation took the property subject to the debts of J. E. Dickerson or J. E. Dickerson & Co., or, in the language of the brief: "When a corporation takes the assets of an individual or partnership concern and issues in payment therefor its stock, as was done in this case, the assets thus passing to the corpo-

ration remain liable for all the debts of the concern." Upon this principle the plaintiff contends that the J. E. Dickerson Company is liable for the note in controversy.

It seems well settled "that a corporation buying all the property of another corporation, paying therefor in stock of the former corporation issued to the stockholders of the latter corporation, must either pay the obligations of the latter corporation or have the property sold to pay such obligations." Cook on Corp., section 673. This doctrine is based upon the principle that corporate property is held in trust, first, for the benefit of the creditors of the corporation, and then for the stockholders, and that such trust attaches to it in the hands of the new corporation.

In *Ins. Co. v. Transportation Co.,* 13 Fed. Rep., 516, *McCrary, C. J.,* says: "A distinction with respect to transactions of this character exists between a corporation and a natural person. A natural person may sell all of his property for a fair consideration if the transaction is *bona fide,* and the buyer will not be required to take care that the seller provides for and pays all of his debts. A corporation, unlike a natural person, by disposing of all its property, may not only deprive itself of the means of paying its debts, but be deprived of corporate existence and place itself beyond the reach of processes at law. At all events, equity cannot permit the owners of one corporation to organize another and transfer from the former to the latter all of the corporate property without paying all of the corporate debts." Taylor on Corp., 655. It is also said that "where a corporation formed by and consisting of the members of a copartnership takes a conveyance or assignment of all of the assets of the partnership for the purpose of continuing the business, it is to be presumed that it has assumed the partnership debts and it is *prima facie* liable therefor." Clark & Marshall on Corp., 346. The same writer says: "But a corpora-

tion that has taken over the property of a partnership is not liable for the debts of the latter, until it is shown that the sale was fraudulent as to the creditors of the latter, or that there was an express contract to assume such liability, or that the transaction was a mere continuation of the partnership."

All of the cases to which our attention has been called have arisen in an effort of the creditors of the first corporation, or of the partnership, to follow the property impressed with the trust into the new corporation. In *Andres v. Morgan,* 62 Ohio St., 236, 78 Am. St. Rep., 712, the facts were that certain persons were conducting business as a partnership known as the Franklin Mill Co.; the partnership being indebted, a corporation was chartered and organized, the property being transferred to the corporation, each partner taking stock representing his interest in the partnership property; the corporation becoming insolvent executed a deed of trust; the creditors of the partnership sought to prove their claims against the assets of the corporation: *Marshall, J.,* says: "On this state of the case it is very clear that the corporation was liable for this debt, whether it had expressly assumed the indebtedness of the partnership or not. It is not to be regarded as an ordinary sale of property by one to another. A partnership is a *quasi* legal entity. It owns property and has liabilities as such. Its creditors have a right to the payment of their claims from the partnership assets in preference to individual creditors, and have, in equity, a lien on the assets of the firm that may be worked out through the partners. So that, when the partners transferred all of the property of the firm to the company, the partnership was dissolved and the rights of its creditors followed the partners and the property into the corporation, and it was bound to discharge the debts of the partnership, having received the property of the partner-

ship on which it had obtained credit. It could not retain the property and repudiate the liability."

A careful examination of the authorities fails to disclose any case in which the principle (upon which a new corporation becomes liable by reason of taking the assets of the old corporation or a partnership) is applied to the transfer of property by an individual in payment of his subscription to the capital stock of a corporation—in the absence of any finding that such transfer was made with intent to defraud his creditors.

In *Austin v. Bank,* 35 L. R. A., 444, 59 Am. St. Rep., 543, the facts were: Russell & Holmes were engaged in business as bankers. The plaintiff deposited with them the sum of $300 and received a certificate therefor. The firm went into liquidation, closed its business and organized a corporation having the name of "The Bank of Russell & Holmes" and engaged in the business of banking as the successor of said bankers Russell & Holmes. Thereafter, the Bank of Russell & Holmes went into liquidation and closed its business, when the defendant bank was duly organized and created by virtue of the National Banking Act. The plaintiff sued the defendant bank on his certificate of deposit, alleging that the defendant was organized, created and came into possession of the property, assets, etc., of the Bank of Russell & Holmes and of the late firm of Russell & Holmes, and that thereby the defendant bank became liable to the plaintiff for the deposit so received. The plaintiff alleged that the business of the defendant bank was carried on in the same building previously occupied by the Bank of Russell & Holmes, and that all the owners and officers of said bank became stockholders of the corporation bank and as such managed and controlled its business, whereby the defendant assumed this indebtedness and became liable therefor. The plaintiff further alleged that the Bank of Russell

135——37

& Holmes was wholly insolvent. The defendant denied the material allegations of the complaint. The Circuit Court gave to the jury a peremptory charge to find for the defendant. Upon appeal, *Post, C. J.,* said: "The judgment of the District Court appears to rest upon the conclusion that the plaintiff has failed to state a cause of action against this defendant, and our investigation of the subject has led to the same result. It will be observed, from a careful reading of the petition, that it is not charged that the Bank of Russell & Holmes became a national bank; that said corporation was reorganized under the National Banking Act or otherwise; that its liabilities, or any part thereof, were in fact assumed by the defendant herein; or that the latter did not, in good faith, in the usual course of business, purchase and pay for the rights and property therein described." After discussing the question involved, the *Chief Justice* concludes: "There are to be found in the reports and textbooks expressions apparently sustaining the proposition that a corporation which upon its organization succeeds to the business and property of another corporation or firm, is from that fact alone chargeable with the indebtedness of the latter. It is, for instance, said by Mr. Beach in his excellent work on the Law of Private Corporations, section 360, that, 'Where an old established corporation sells out to a newly organized one and turns over all its property, the new company becomes liable upon the debts and contracts of the old.' The strict accuracy of that statement may, we think, be doubted, in view of the omission therefrom of any reference to the purpose or character of the transaction contemplated, or the consideration therefor." He then proceeds to classify the cases in which such liability attaches: "1. Cases in which the liability of the new corporation results, not from the operation of law, but from its contract relation with the old. 2. Cases in which the transfer of the

property and franchise amounts to a fraud upon the cred-
itors of the old corporation.    3. Cases where the circum-
stances attending the creation of the new corporation and
its succession to the business, franchise and property of the
old are such as to raise the presumption or warrant the find-
ing that it is a mere continuation of the former—that it is,
in short, the same corporate body under a different name.
And the facts upon which such finding or presumption
depends will not be presumed, but should affirmatively
appear from the pleadings and proofs." It will be observed
that there is no suggestion that these principles would apply
to the cases in which an individual transferred his prop-
erty in payment of his stock.    We can see no difference
between the transaction set forth in this record and the one
in which Dickerson had sold his property and taken a note
therefor.    This certainly would be no fraud upon creditors
unless made with a fraudulent intent.    If, in the latter case,
he had transferred the note to a *bona fide* purchaser for
value and without notice, the purchaser would acquire a
good title as against his creditors.    The case of *Friedenwald
v. Tobacco Works,* 117 N. C., 544, comes within the first
and third classes.    The firm of J. E. Dickerson & Co. was
not liable upon this note.    J. E. Dickerson, trading under
the name of J. E. Dickerson & Co., was personally liable
thereon.

For the purpose of passing upon the defendant's excep-
tion to his Honor's charge upon the fourth issue, we must
assume that he accepted the defendant's testimony as true.
From that point of view, the condition of the property at
the time of the organization of the corporation was as fol-
lows: The firm of J. E. Dickerson & Co. having been dis-
solved, its entire assets had become the property of J. E.
Dickerson by purchase from the surviving partner and per-
sonal representatives of the deceased partners.    This condi-

tion continued from the date of the purchase, December 12, 1895, until August 1, 1896. At that date there were no liens upon the property, and Dickerson had a right to sell it or transfer it to either of his creditors in payment of their debts, provided it was done in good faith. Upon the formation of the corporation an inventory of the goods was taken and the corporation purchased them, issuing to Dickerson stock in payment therefor, Dickerson agreeing to pay the debts of J. E. Dickerson & Co. There was no concealment of the transaction from the First National Bank of Asheville, the cashier being one of the incorporators and knowing all of the facts connected with it. We see no evidence, from the defendants' testimony, at least, tending to show any fraud upon his creditors, except that Dickerson says that his purpose in organizing the corporation was to avoid certain liability on account of a suit in the Federal Court, upon which it seems no judgment has ever been obtained. The shares of stock which were issued to Dickerson were subject to his debts to the same extent as the property assigned to the corporation. There being no liens upon his stock, he had a right to sell it or assign it to either of his creditors. He swears that this was done in good faith without intent to defraud any one. Mr. Robertson says that at the time he took the assignment he knew nothing of Dickerson's indebtedness. When the final transaction occurred, in which Dickerson parted with the title to the stock and all his interest in the goods and other assets of the J. E. Dickerson Company, there was a surrender of the indebtedness to Robertson and the personal representatives of the deceased partners. This certainly constituted Robertson a purchaser for value, and there is no evidence that he had any notice of Dickerson's indebtedness to the bank. We are unable to see why this did not vest in Robertson a perfect title to the stock and to such interest as Dickerson had in

the property, being that which remained after the payment of the debts of the corporation. Robertson having assumed the payment of these debts and they having been paid, no question arises in respect to any indebtedness of the corporation.

The action of Dickerson in respect to the formation of the corporation was, not as a matter of law, a fraud upon his creditors. So far as we can see from his testimony, he regarded the Asheville bank as absolutely solvent. The note upon which he was endorser was made for the accommodation of the bank. It seems from the testimony that he became indebted to the bank in some large amount, but at what time such indebtedness accrued, or exactly how it came about, is not very clear from the testimony. In fact, there seems to be much controversy as to the origin and extent of his indebtedness. Dickerson's testimony tends to show a course of dealing with and on part of the bank which was well calculated to and did result in fraud upon the plaintiff. If his purpose in the formation of the corporation, transfer of his property, and his subsequent dealings in respect thereto with the defendant Robertson, were with a fraudulent intent, and this was known to Robertson, or he was put upon notice, the assignment of stock to him could be set aside by Dickerson's creditors. These, however, were questions of fact which should have been submitted to the jury under proper instructions from the Court. The corporation did not assume the indebtedness of J. E. Dickerson, and is not liable as a corporation therefor unless such liability attaches by operation of law. If there was any fraudulent purpose on the part of Dickerson in transferring the property to the corporation, his creditors had their remedy to follow and subject it to the payment of their debts, unless other and superior rights had attached. Such purpose is

expressly denied by Dickerson. It therefore became an issue of fact to be determined by the jury. Many facts and circumstances are called to our attention as constituting fraud which are competent as evidence, but do not of themselves, considered either singly or taken together, constitute fraud *per se*. "An insolvent owner of property has the same right as one who is solvent to dispose of it by a sale or conveyance to secure a present indebtedness in the absence of an operating bankrupt act, when done *bona fide* and not with the covinous purpose of hindering or defrauding creditors, and the presence of such purpose alike vitiates and avoids the conveyance made by either. When the vitiating intent appears in the instrument itself, the Court ascertains and adjudges the fact and no jury finding is necessary. But when the fraud is to be inferred from surrounding circumstances, and is not an element in the transaction, it must be found by a jury and upon a proper issue framed to raise the inquiry." *Beasley v. Bray,* 98 N. C., 266. The cause should be remanded and a new trial had upon the issue of fraud raised by the pleadings, and the claim of the defendant Robertson that, in any event, he is a purchaser for value and without notice. The burden of proof upon the first issue will be upon the plaintiff, and as to the second upon the defendant. *Cox v. Wall,* 132 N. C., 730. Let this be certified.

New Trial.

### PLAINTIFFS' APPEAL.

CONNOR, J. His Honor instructed the jury to answer the third issue: "Is the defendant W. S. Robertson personally indebted to the plaintiff; if so, in what amount?" in the negative. The plaintiff excepted and appealed. For the reasons given in the opinion in the defendants' appeal we are of the opinion that his Honor correctly instructed the

jury. There is no aspect of the testimony in which the defendant W. S. Robertson could be personally liable to the plaintiff. The judgment in that respect must be affirmed.
Affirmed.