COMMERCIAL SAVINGS BANK, Appellee, v. L. J. SCHAFFER, Appellant.

**BILLS AND NOTES:** Negotiability—Nonpayment of Interest. A promissory note is not rendered nonnegotiable by a provision that "a failure to pay any of said interest within thirty days after due" matures the entire note.

**BILLS AND NOTES:** Negotiability—Resort to Law Merchant. The Negotiable Instrument Act does not declare what effect shall be given to a provision in a note that "nonpayment of interest shall mature the entire note," and therefore such effect must be determined from the law merchant.

**BILLS AND NOTES:** Holder in Due Course—Effect of Renewal. A holder in due course of collateral notes does not cease to be such by the naked act of *renewing* the principal note, even though, at the time of such renewal, the collateral holder has acquired knowledge of a defense to the note.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

FEBRUARY 15, 1921.

ACTION on promissory note. Judgment for the plaintiff, and defendant appeals.—*Affirmed.*

*Brockett, Strauss & Shaw* and *Isaac Petersberger*, for appellant.

*A. L. Hager*, for appellee.

FAVILLE, J.—The appellee is a banking corporation, doing business in Des Moines. This suit is brought on a promissory note, executed by the appellant to the American Silo Company, of Des Moines, Iowa, and transferred to the appellee as collateral security for an indebtedness due from said American Silo Company to the appellee. The defense interposed was that the note was given to the American Silo Company under a contract between the appellant and said company, whereby the said Silo Company had assigned to the appellant its rights to erect silos in accordance with a certain invention known as the "Playford Patent." It was alleged that the said patent was subsequently declared by the United States court to be invalid, and of no force and effect, and that the Silo Company had abandoned the construction of machines under the patent, since the date of said decree. It is also alleged by the appellant that, previous to the execution of the said contract, various false and fraudulent representations had been made to the appellant by the said Silo Company, and that said note was obtained from the appellant in pursuance of said representations. It is denied that the appellee is an innocent purchaser of the note in suit for value without notice, and it is alleged that said note, by its terms, is nonnegotiable. The note in question is in words and figures as follows:

> "Des Moines, Iowa, Mch. 15, 1917. ꓹ No. 542
> "Due June 15, 1918.
> "$500.00

"June 15, 1918, after date, for value received, I or we promise to pay to the order of

"American Silo Co., of Des Moines, Iowa.

"Five Hundred and no-100......................Dollars, in gold coin of the United States of America, of or equal to the present standard value, at Commercial Savings Bank, of Des Moines, Iowa, with interest at eight per cent per annum from date payable annually.

"Should any of the interest or principal not be paid when due, it shall bear interest at the rate of 8 per cent per annum, and a failure to pay any of said interest within thirty days after due, shall cause the whole note to become due and collectible at once.

It is also stipulated that should the collection of this note be enforced by law or be collected through an attorney without suit, a reasonable amount shall be paid, or allowed as attorney's fee and taxed with the costs in this cause. We further agree that in any suit to collect this note, any justice of the peace may have jurisdiction to the amount of $300. Indorsers and guarantors waive demand of payment, protest and notice of nonpayment and also agree to an extension of time on this note without notice. "P. O. Address. Princeton, Iowa.

"L. J. Schaffer."

But two questions are presented for our consideration, which are as follows: First, is the note in suit a nonnegotiable instrument, as claimed by the appellant, for the reason that the sum payable is not certain, under the terms of the Negotiable Instrument Statute of Iowa? Second, if the note is negotiable, is the appellee a holder thereof in due course?

I. In respect to the alleged nonnegotiability of the note set out, the precise question urged by the appellant is that the note is rendered nonnegotiable because of the provision therein that "a failure to pay any of said interest within thirty days after due shall cause the whole note to become due and collectible at once." Section 3060-a2, Code Supplement, 1913, being a portion of the so-called Uniform Negotiable Instrument Law, provides:

1. BILLS AND NOTES: negotiability: nonpayment of interest.

"The sum payable is a sum certain within the meaning of this act although it is to be paid: * * * 3. By stated installments, with a provision that upon default in payment of any installment, the whole shall become due."

Appellant concedes that, if this note had been payable in installments, and had provided that a "failure to pay any of said installments within thirty days after due shall cause the whole note to become due and collectible at once," the sum would be certain, and the note would be a negotiable instrument, under the terms of the statute. But it is appellant's contention that the note in this respect refers to *"interest,"* instead of *"installments,"* and that this insertion in the note renders it nonnegotiable. It is argued by the appellant that the Uniform Negoti-

able Instrument Statute, which was adopted generally in the various states of the Union, was designed to make uniform throughout the country the law of negotiable instruments. The statute, however, was not adopted in identical language in all of the states. It is argued that the states of Iowa, Idaho, North Carolina, and Wyoming, in adopting the Uniform Negotiable Instrument Statute, .omitted therefrom the words "or of interest," and did so advisedly. It is contended that the insertion of such clause, not being included within the act, renders the note nonnegotiable.

It must be admitted that, by its terms, this clause of the note does not bring it within the language of the section of the statute quoted. "Installments" and "interest" are two entirely separate and distinct things. The real question is whether or not this note is nonnegotiable because it contains the provision in respect to the acceleration of the due date of the note by a failure to pay interest. It is argued by appellant that, because the Iowa legislature omitted the words "or of interest," in enacting the Uniform Negotiable Instrument Statute, it was the purpose and intention of the legislature that instruments that did contain such a clause should be nonnegotiable.

There would be more force in this position of counsel's if the Negotiable Instrument Law in force in the majority of the states of the Union had, in fact, been previously enacted in Iowa, and had thereafter been amended. In other words, the intent of the legislature in a matter of this kind may more readily be determined by an amendment to existing laws than it is by the failure to enact a proposed statute in the exact terms in which it may be adopted by some other state or states. If the statutes of Iowa had contained such a provision as is contained in the Negotiable Instrument Law in some of the other states, and our legislature had, by amendment, stricken the clause from the statute, then we would be in a different position to inquire as to the purpose and intent of the legislature in making such an amendment.

Our real inquiry is, however, Does the provision referred to in this note render it nonnegotiable? Section 3060-a196 is a section of the same statute, and provides:

2. BILLS AND NOTES: negotiability: resort to law merchant. "In any case not provided for in this act, the rules of the law merchant shall govern." The note in the instant case comes squarely within this latter provision of the statute. The act itself is entirely silent on the effect of the insertion in a note of a clause like the one under consideration. It can with much force be argued that, as a matter of logic, there is no good reason why, if a note is negotiable which provides that the entire note shall become due upon the failure to pay an *installment* thereof, a note would not also be negotiable that provides that it should become due upon the failure to pay *interest* thereon. But, the clause not being included within the statute in terms, we are compelled to find whether, under the rules of the law merchant, the insertion of such a clause renders the instrument nonnegotiable. We think the decisions are substantially in accord on the proposition that such an instrument is negotiable.

In *Des Moines Sav. Bank v. Arthur*, 163 Iowa 205, we had under consideration a note and mortgage, the latter containing stipulations regarding the payment of taxes, committing waste, providing insurance, and similar matters. It also contained this clause:

"A failure to comply with any of the agreements hereof (including warranty of title) causes the whole debt to at once become due and collectible, if said second party or assigns so elect."

We said:

"As the provisions of the mortgage in the case at bar did not render the amount payable on the note uncertain, the note cannot be denounced as nonnegotiable on this ground. Nor did the clause giving the mortgagee on breach of certain conditions the election to declare the entire indebtedness due. Under the Negotiable Instruments Act, an instrument to be negotiable 'must be payable on demand, or at a fixed or determinable future time.' Section 3060-a1, Code Supp. This note was payable 'on the 6th day of October, 1910.' It was certain that the time would arrive when the note would be payable, and the circumstances that it might become payable before that time upon the default of the maker in certain respects at the option of the payee or holder did not affect its negotiability."

In the instant case, the note, by its terms, was payable June 15, 1918, and, as declared in the *Arthur* case:

"It was certain that the time would arrive when the note would be payable, and the circumstances that it might become payable before that time upon the default of the maker in certain respects at the option of the payee or holder did not affect its negotiability."

The *Arthur* case was approved in *Lundean v. Hamilton*, 184 Iowa 907, as to this question.

The rule announced in these cases is determinative of the question in the instant case. We hold that the clause in the note in question providing that, "upon the failure to pay any of said interest within thirty days after due, shall cause the whole note to become due and collectible at once," did not render the note nonnegotiable.

As bearing on the question in other jurisdictions, see *Chicago R. E. Co. v. Merchants' Bank*, 136 U. S. 268 (10 Sup. Ct. Rep. 999); *Hunter v. Clarke*, 184 Ill. 158 (56 N. E. 297); *Hollinshead v. Stuart & Co.*, 8 N. D. 35 (77 N. W. 89); *Phelps v. Sargent*, 69 Minn. 118 (71 N. W. 927); *Merrill v. Hurley*, 6 S. D. 592 (62 N. W. 958); *Roberts v. Snow*, 27 Neb. 425 (43 N. W. 241); *Ernst v. Steckman*, 74 Pa. St. 13; *Zollman v. Jackson Tr. & Sav. Bank*, 238 Ill. 290 (87 N. E. 297).

II. The appellant contends that the appellee is not a holder of said note in due course. The testimony disclosed that, on April 1, 1917, the American Silo Company, through its proper

**3. BILLS AND NOTES: holder in due course: effect of renewal.** officer, borrowed $3,500 of the appellee bank, and executed its note therefor, which was due March 1, 1918. At the time said note was given, the maker of said note secured the appellee therefor by a deposit of collateral securities, and among the notes so deposited as collateral was the note in suit in this cause. When the said $3,500 note of the Silo Company to the appellee bank became due, on or about March 1, 1918, the note was renewed by the execution of a new note for a like amount, and the collateral deposited when the original note was made continued to be held by the appellee, as collateral to the debt. The old note originally given for the indebtedness was at said time delivered to the maker thereof. No other change in the situation took place.

It is the claim of the appellant that, at the time of the renewal of this note by the appellee, conditions had developed which charged the appellee with notice that the appellant's note, which appellee held as collateral, was subject to equities, and particularly that there had then been a failure of consideration for the execution of the same. The legal question involved is whether or not the renewal of the original note, without disturbing the securities, so changes the status of the parties as to make defenses to the collateral paper available, if, at that time, the holder of the collateral has notice of such defenses. The determination of this question involves a consideration of the character of the contract between the parties.

When the Silo Company borrowed the $3,500 from the appellee, and gave its note therefor, it deposited with the appellee the note in suit, as collateral to the original indebtedness, evidenced by the note of $3,500, which it then gave. The collateral was pledged to secure the indebtedness which the Silo Company owed to the appellee. That indebtedness was evidenced by a promissory note. When said note became due, the evidence of the indebtedness was changed by the surrender of the old note and the execution of a new one, but there was no change whatever in the indebtedness. If the new note had been accepted in payment of the old note, or if a change had been made in the debt, as by increasing the amount thereof, then we would have had an entirely different proposition. It is the rule that, where the note is given merely in renewal, and not in payment, the renewal does not extinguish the original debt or in any way change it, except by postponing the time of payment, and that the relation of the parties as to securities is not changed. *Lowry v. Fisher*, 2 Bush (Ky.) 70 (92 Am. Dec. 475); *Miller v. Hilton*, 88 Me. 429 (34 Atl. 266); *Miller v. McCarty*, 47 Minn. 321 (50 N. W. 235); *First Nat. Bank v. Lesser & Lewinson*, 9 N. M. 604 (58 Pac. 345); *Jagger Iron Co. v. Walker*, 76 N. Y. 521; *McLaughlin v. Bank of Potomac*, 7 How. (U. S.) 220, 228; *Bank v. Hollingsworth*, 135 N. C. 556 (47 S. E. 618).

In *Holland Tr. Co. v. Waddell*, 75 Hun 104 (26 N. Y. Supp. 980), the court declared:

"The principle is too well settled to need the citation of authorities that the renewing of notes, from time to time, in no

way extinguishes the original debt. It is simply an extension of the time of payment, and a change as to the evidence of the debt, and all collaterals pledged for the payment would remain as security, notwithstanding the extension of the time of payment.''

In *First Nat. Bank v. McGrath,* 111 Miss. 872 (72 So. 701), where the suit was on a collateral note, the Supreme Court of Mississippi says:

''The fact that the original note of the Puritan Manufacturing Company to the Bank of Iowa City has been renewed several times does not in any way alter the position of the bank with reference to being a bona-fide holder or purchaser for value of the note here sued on. 7 Cyc. 877 and 879; *Mix v. Bank,* 91 Ill. 20, 33 Am. Rep. 44; *Cansler v. Sallis et al.,* 54 Miss. 446.''

The rule as announced appears to us to be sound in reason and supported by authority. In the instant case, the undisputed testimony shows that the original note was merely renewed. No change whatever was made in the relation of the parties, and the original indebtedness remained the same. The note in question was given as collateral, to secure said indebtedness, and, being free from equities in the hands of the appellee as a holder in due course, when originally pledged, would not be subject to equities by the mere giving of a new note to evidence the original indebtedness, when no new contract was made and the position of the parties remained unchanged.

It is admitted that, at the time of the original pledging of the note in suit as collateral security, there were no equities available to the maker. It is claimed that, at the time of the renewal of the original note, there had been a failure of the consideration for which the appellant's note was given, and that the bank had knowledge of such failure of consideration, at the time of said renewal of the original note. As we have before pointed out, even if this were true, it would not affect the right of the appellee bank as a bona-fide holder of said note, the renewal not being intended in any way, under the evidence, to change the original indebtedness which the note in suit was pledged to secure.

In any event, the trial court heard the evidence on the question of whether or not the appellee had notice at any time of said

alleged defenses, and held that, under the evidence, the appellee was a holder in due course. The cause was tried to the court without the intervention of the jury, and this finding by the trial court has the force and effect of a verdict by a jury, and we cannot interfere therewith. A careful examination of the entire evidence in the case convinces us that the conclusion reached by the trial court upon the facts was correct. The judgment of the lower court is—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.

DE GRAFF, J., took no part.