E. M. POMEROY, Appellee, v. FARMERS SAVINGS BANK OF SHELBY et al., Appellants.

BANKS AND BANKING: Loans—Excess Loans—Note of Third Party
1   to Conceal—Effect. One who, in order to enable a state banking
    institution to conceal the fact that it has made loans to a borrower in
    excess of the amount permitted by law, executes and delivers to the
    bank his promissory note in lieu of such excess loans, is entitled, when
    the said excess notes are paid by the borrower, to a surrender of his
    note and the collateral pledged therewith.

CORPORATIONS: Stockholders—Right to Question Corporate Manage-
2   ment. The corporate management of a corporation may not be ques-
    tioned by stockholders who became such subsequent to the acts in
    question.

Headnote 1: 7 C. J. p. 713 (Anno.)  Headnote 2:  14a C. J. p. 156.

*Appeal from Shelby District Court.*—TOM C. WHITMORE, Judge.

DECEMBER 14, 1926.

REHEARING DENIED MARCH 22, 1927.

Action in equity, to cancel a certain promissory note exe-cuted by the plaintiff to the defendant-bank, and to cancel an assignment of a mortgage, as collateral, for the payment of the note, and for judgment against the defendant for the interest upon the mortgage, and for an injunction to restrain the defendant from transferring said note. The interveners herein, as purchasers of certain stock in the defendant-bank subsequently to the making and delivery to the defendant-bank of the note in suit, plead that plaintiff is estopped from asserting her claim. The trial court dismissed the petition of intervention, and determined the equities of the cause, as to both defendant

and the interveners, to be with the plaintiff. From the decree entered, the defendant and the interveners appeal.—*Affirmed.*

*Turner & Turner* and *T. H. Smith,* for appellants.

*Bennett Cullison* and *Sidney T. Frum,* for appellee.

DE GRAFF, C. J.—Two questions are presented on this appeal: (1) Is the plaintiff entitled to the relief prayed? (2) Did the trial court err in dismissing the petition of intervention? Of these in their order:

I. The facts disclose that the defendant-bank loaned large sums of money, at various times, to one C. E. Caldwell and to one Julius Hager, respectively, and that these loans were in

1. BANKS AND BANKING: loans: excess loans: note of third party to conceal: effect.

excess of the legal limit, under the statute. These loans were evidenced by promissory notes of the respective borrowers, and it appears that, in order to enable the bank to stand the test of examination by the state banking department of Iowa, the president of said bank, R. M. Pomeroy, proposed to the plaintiff that she give her note to the bank for $8,000, which would be carried on the books of the bank in lieu of an equal amount of the Caldwell and Hager notes. This proposal was accepted by the plaintiff, E. M. Pomeroy, who was the daughter of the president, and the bookkeeper in said bank.

Pursuant to said understanding between her and the president, she did execute to the defendant-bank her note for $8,000, dated November 18, 1921, due in six months, and, as a part of said transaction, she also signed and delivered to the defendant-bank, as collateral, a $10,000 note executed by John F. Powers, secured by a mortgage on certain Shelby County, Iowa, real estate. It further appears that the defendant collected, at the time the instant petition was filed, the sum of $600 as interest on said mortgage.

It is the claim of the plaintiff that said note and mortgage were delivered to the defendant without consideration, and that the note constituted and was accommodation paper.

The defendant answered the petition of plaintiff, and admitted the loans to Caldwell and Hager; admitted the transfer of the Powers note and mortgage to the defendant; admitted the

collection of the $600 interest aforesaid; but denied that the note was executed and that the Powers note and mortgage were signed and delivered in the manner and for the purpose alleged by the plaintiff. The defendant further alleged in its answer that, from and after the delivery of the said note to the bank, it was carried with the bills receivable, as an asset of the bank, and that plaintiff knew that the note was carried by the bank in good faith as one of the assets of the bank.

Upon the conclusion of the evidence, plaintiff filed an amendment to her petition, to conform to the proof, and therein alleged that the $2,000 Hager note, for which a part of the $8,000 note had been substituted, was paid to the defendant bank, and that $2,000 was indorsed "paid" on the back of plaintiff's note; that the Caldwell notes, one for $1,000 and one for $5,000, were not indorsed by the defendant to the plaintiff, and that a mortgage securing same was never assigned to the plaintiff; that the Caldwell notes aforesaid were secured by a mortgage executed by the said Caldwell to the defendant-bank, and that on the 14th day of September, 1921, a decree was entered in the district court of Iowa in and for Shelby County, foreclosing a prior mortgage on said real estate; that this plaintiff was not a party to said action; that pursuant to said decree the land was sold on special execution; that thereafter, and on the first day of August, 1922, the defendant herein made redemption as holder of its mortgage; that in said redemption the defendant satisfied the entire lien of said mortgage, by failing to file its affidavit as to the amount it was willing to hold said land on redemption; that said satisfaction was wholly without the knowledge of this plaintiff.

By amendment to answer to the petition, the defendant denied that the note in suit was given as an accommodation note, and alleged that the note in suit was given by the plaintiff to the defendant in the renewal of a note of same amount executed and delivered to the defendant by plaintiff; that by the execution of said renewal note her former notes were canceled and surrendered; and that plaintiff thereby waived any claim or right she had to plead or show that said renewal note was an accommodation note or without consideration.

Various motions to the pleadings were filed by the respective parties hereto, but it was agreed by the parties in open court

that such motions should be submitted with the case upon the trial below, and be determined in the final decree, and that answers and replies might be filed without waiving such motions.

The record facts are undisputed that the Hager and Caldwell notes for which the plaintiff's note was accepted by the bank were what is termed in banking parlance "excess notes," and the purpose of accepting the plaintiff's note by the bank is quite evident. When the Hager and Caldwell notes had been taken out of the bank, they were kept by the president in his private box, and the plaintiff's note took their place on the records of the bank. These notes so removed from the bank's records were not indorsed to the plaintiff, and no assignment was ever made to the plaintiff of any interest in the mortgages securing any of these excess notes; nor has she received any payment of them. She was entitled to an indorsement. Apparently it was the practice for the directors and other persons connected with the bank to substitute their individual notes in lieu of excess paper in the bank.

In brief, there is no serious dispute as to the facts surrounding the instant transaction. It must be conceded that the president of the bank, in doing what he did, was acting according to his best judgment, for the interest of the bank. This, however, did not make the transaction legal. *Rogers v. First St. Bank* (Colo.), 243 Pac. 637. With the ethics of the matter we are not concerned. The statute defining the limit of loan by a bank is a rule for the management of the bank, and does not concern the liability of a party who signs paper evidencing a loan in excess of the legal limit.

It may further be observed that appellee contends that the transaction giving rise to the note in suit was consummated with no thought of any gain to the plaintiff. This is immaterial. It cannot be claimed that the placing of the plaintiff's note upon the records of the bank extinguished the liability of Caldwell and Hager on the paper for which plaintiff's note was substituted, but in fact the Hager paper was paid to the bank, and the mortgage securing the Caldwell paper was redeemed by the bank, and the debt satisfied upon the redemption of a foreclosure of a prior mortgage on the land. This is material.

The facts are inconsistent with any claim that the note given by the plaintiff was for a bona-fide indebtedness owed by

her, or for the purchase of any of the bank's paper. The object sought to be accomplished by the president of the bank has seen its fulfillment. The obligation is paid. It would not be equitable, under the facts, to permit the bank now to repudiate. See *Security Sav. Bank v. Hambright,* 195 Iowa 1147; *First Nat. Bank v. Felt,* 100 Iowa 680; *Woodbury v. Glick,* 151 Iowa 648. Nor does it avail the defendant to plead that the note in suit is a renewal of the accommodation note in the hands of the original payee. There are no circumstances that work an estoppel or which in any way affect the rights of the parties thereto. The renewing of the note did not extinguish the original debt. It simply changed the evidence of the debt. *Commercial Sav. Bank v. Schaffer,* 190 Iowa 1088. The equities are clearly in favor of the plaintiff, as against the defendant-bank, and the decree entered in favor of plaintiff and against the bank must be affirmed.

II. We now turn to the claim asserted by the appellant-interveners. It is disclosed by the record that the intervener stockholders were stockholders of the bank at the time of this

2. CORPORATIONS: stockholders: right to question corporate management.

transaction. Later, they purchased from Mr. Pomeroy his majority stock at par value ($15,000), and divided it among themselves. If the transaction between the president and the appellant-bank in the acceptance of the note of this plaintiff in exchange for excess notes held by the bank be viewed as a mismanagement of the bank affairs, the stockholders cannot complain. The Supreme Court of Nebraska, in *Home Fire Ins. Co. v. Barber,* 67 Neb. 644 (93 N. W. 1024), speaking through Roscoe Pound, commissioner, used this language:

"Sound reason and good authority sustain the rule that a purchaser of stock cannot complain of the prior acts and management of the corporation. * * * 'The weight of authority seems to be that a person who did not own stock at the time of the transactions complained of cannot complain or bring a suit to have them declared illegal.'"

Without further discussion of the contentions of the appellants herein, the decree entered by the trial court in all particulars is—*Affirmed.*

EVANS, ALBERT, and MORLING, JJ., concur.