**L. H. WAGENER, INC., Appellant,**

v.

**W. H. KENDALL and H. S. Ostlin, Appellees.**

**No. 61644.**

Supreme Court of Iowa.

April 25, 1979.

James W. Cleverley, of Diehl, Clayton, Cleverley & Knopf, Newton, for appellant.

Herbert S. Selby and Nathan B. Updegraff, of Selby, Updegraff & Smith, Newton, for appellees.

Considered by REES, P. J., and HARRIS, McCORMICK, ALLBEE and LARSON, JJ.

McCORMICK, Justice.

This appeal arises from an action upon a promissory note against an accommodation endorser. The case was tried to the court at law and resulted in judgment for defendant. The determinative question is whether the trial court erred in holding that the accommodation endorsement was effectively revoked before the note was negotiated to plaintiff. We affirm the trial court.

W. J. Kendall was the maker of the $10,000 note which was payable to the First National Bank, Prairie City, and executed January 16, 1965. Defendant H. S. Ostlin endorsed the note as surety to accommodate

Kendall. The First National Bank sold the note to Calvin Wilson in December 1966, endorsing the note "without recourse."

Plaintiff L. H. Wagener, Inc., agreed to purchase the note from Wilson in January 1967. L. H. Wagener, president of plaintiff, dealt with Collin Fritz, vice president and trust officer of the Jasper County Savings Bank, Newton, who had a power of attorney from Wilson. They agreed the note would be negotiated to plaintiff after plaintiff's check cleared. Fritz received plaintiff's check on January 9, 1967. He gave Wagener a letter confirming the agreement, accompanied by a photostat of the note. The letter provided:

> We are in receipt of your check in the amount of $2,693.50 payable to Calvin Wilson. Upon payment of this check, Mr. Calvin Wilson will then endorse a note bearing date of January 16, 1965 in the original amount of $10,000.00 now showing a balance of $3,188.33 plus interest and signed by W. J. Kendall, along with assignment of the chattel mortgage bearing same date and amount to L. H. Wagener, Inc., Security Bank Bldg., Storm Lake, Iowa.

Subsequently Fritz caused the following endorsement to be typed on the note: "H. S. Ostlin and Calvin Wilson hereby assign all their rights and interest to L. H. Wagener, Inc. Without Recourse." At Fritz's request, the endorsement was signed by H. S. Ostlin and Calvin Wilson. Fritz mailed the note so endorsed to plaintiff on January 25, 1967.

Wagener wrote Fritz a letter dated February 25, 1967, in which he said:

> I received your transmittal letter of January 25, 1967 and the documents referred to therein. The endorsement on the note however does not conform to your letter of January 9, 1967 and the photostats of the face and back side of the note at that time.

> Should my security on this note be jeopardized in any way as the result of your failure to conform strictly to the trust agreement referred to in your letter of January 9, 1967, then I will look to you

for any loss your handling of this matter may have caused me.

No further action was taken until plaintiff brought the present action on the note against Kendall and Ostlin, seeking recovery of an alleged balance owed of $3,188.33 plus interest. Plaintiff obtained judgment against Kendall by default. The claim against Ostlin is predicated upon his original status as an accommodation endorser.

■ Ostlin defended on the theory he revoked his accommodation endorsement prior to negotiation of the note to plaintiff. He also alleged the note had been paid. In holding for Ostlin, the trial court found the revocation defense was established. No finding was made or requested on the issue of payment. Therefore that issue will not be considered on review. *See Henschel v. Hawkeye-Security Insurance Company,* 178 N.W.2d 409, 420 (Iowa 1970). The only question we must answer is whether the court erred in ruling for Ostlin on the basis of the revocation defense.

When the Kendall note was made in 1965, the transaction was governed by the provisions of the Iowa Negotiable Instruments Law, chapter 541, The Code 1962. When Ostlin endorsed the note without recourse in 1967, that event was subject to the Uniform Commercial Code, chapter 554, The Code 1966. *See* 554.10101, The Code 1977.

■ Neither statute affects the right of an accommodation party to revoke his loan of credit at any time prior to negotiation of the instrument to a holder for value. *Compare* § 541.29, The Code 1962, *with* § 554.3415, The Code 1977. *See* Peters, *Suretyship Under Article 3 of the Uniform Commercial Code,* 77 Yale L.J. 833, 878 (1968). The accommodation party can revoke his suretyship by erasing or striking out his signature or by any form of notice to the parties concerned. However, the accommodation may not be unilaterally revoked after negotiation. *Dean v. Lyde,* 223 Ala. 394, 136 So. 857 (1931); *Second National Bank v. Howe,* 40 Minn. 390, 42 N.W. 200 (1889); *Frana v. Rollins,* 59 S.D. 156, 238 N.W. 574 (1931); *Fox v. Cortner,* 145 Tenn. 482, 239 S.W. 1069 (1922); Annot., 22 A.L.R.

1348 (1922). *See also Pomeroy v. Farmers' Savings Bank,* 203 Iowa 524, 211 N.W. 219 (1926).

■ Ostlin's accommodation endorsement was not revoked before negotiation of the Kendall note to Wilson, and Wilson's status as a holder for value is not challenged. Hence Ostlin had lost his unilateral right to revoke his loan of credit to Kendall, but that is not the question here.

Instead the question is whether a disclaimer of liability made with the consent of the holder of a note revokes the suretyship as to a subsequent holder.

Under the Uniform Commercial Code, which controlled the negotiation of the note to plaintiff, a qualified endorsement manifested by the words "without recourse" is a disclaimer of liability. *See* §§ 554.-3413–.3417, The Code 1977. Thus Ostlin purported to disclaim liability to any subsequent holder of the note when he endorsed it "without recourse."

The legal effect of this disclaimer does not depend upon Ostlin's unilateral right to revoke his suretyship at that time. Rather it depends upon Wilson's capacity to discharge Ostlin's liability. His power to do so is established in section 554.3605, The Code 1977, which provides in part:

1. The holder of an instrument may even without consideration discharge any party

a. in any manner apparent on the face of the instrument or the endorsement, as by intentionally canceling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature  .   . . .

Through the agency of Fritz, Wilson was the holder of the note at the time it was proffered to Ostlin for qualified endorsement. *See* § 554.1201(20). Wilson had capacity to discharge Ostlin altogether so long as he was holder of the note, and his request of Ostlin for a qualified endorsement of the note was one way in which this power could be exercised.

As holder of the note, Wilson was accommodated by Ostlin's original endorsement.

Wilson had a right to negotiate the note to plaintiff with that endorsement intact. He chose not to do so. In procuring Ostlin's qualified endorsement, Wilson relinquished his right to negotiate the note to plaintiff subject to Ostlin's continued suretyship. Ostlin could not have unilaterally revoked his suretyship, but he could disclaim liability to any subsequent transferee of the instrument when the holder of the note authorized him to do so.   ·

■ Ostlin's qualified endorsement was placed on the note before its delivery to plaintiff. Therefore under section 554.3202 the endorsement occurred before negotiation of the instrument to plaintiff. Negotiation does not take place until transfer of an instrument in such form that the transferee becomes a holder. When, as here, an instrument is payable to order, it is negotiated by delivery with any necessary endorsement. Consequently, the qualified endorsement of Ostlin constituted a revocation of his suretyship before plaintiff acquired any rights against Ostlin through negotiation of the instrument.

Ostlin was not party to the agreement between Wilson and plaintiff. We do not intimate any view regarding any claim plaintiff may have against Wilson, Jasper County Savings Bank, or Fritz for breach of the agreement under which it purchased the note. The question here concerns only its rights against Ostlin, and Ostlin was not bound by that agreement.

We hold only that plaintiff may not look to Ostlin for payment because Ostlin's qualified endorsement, secured at the behest of Wilson's agent, effectively revoked his suretyship on the note before it was negotiated to plaintiff.

We find it unnecessary to decide whether section 554.3208 has any application in this case. That provision permits a party to cancel any endorsement which is not necessary to his title when the instrument is returned to or reacquired by him. Here Wilson delivered the note to Ostlin for the very purpose of obtaining his qualified endorsement. Section 554.3208 concerns can-

cellation of an endorsement by a party in his own right.

No basis for reversal appears.

AFFIRMED.